EDMUND J. OLES *v.* FRANK P. FURLONG ET AL.,
EXECUTORS (ESTATE OF HARRY S. BOND) ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued December 3, 1947—decided January 29, 1948

*Louis M. Schatz,* with whom were *S. Michael Schatz* and, on the brief, *Nathan A. Schatz* and *Arthur H. Schatz,* for the appellant (plaintiff).

*Pomeroy Day,* with whom was *William K. Cole,* for the appellees (defendants).

MALTBIE, C. J.   This is an appeal by the plaintiff from a judgment of the Superior Court dismissing an appeal from a decree of the Probate Court for the district of Hartford in the matter of the estate of Harry S. Bond.   On May 7, 1941, four of the executors named in the will of Bond survived, one of whom was Willard B. Rogers.   On that day the other three made an application to the Probate Court in which they recited that the principal assets remaining in the estate were certain shares of stock in The Hotel Bond Company; that, in order to pay claims against the estate presented and approved and to settle it, it was necessary to sell the stock; that the executors had received only two offers for its purchase, one of which was from their coexecutor Rogers; and that in the opinion of the applicants the acceptance of that offer would be in the best interests of the estate; and they asked that they or some other suitable person be authorized and directed to accept the offer

and transfer the stock to him. On June 30, 1941, the court continued the hearing to September 8, 1941, stating in the order that written proposals for the purchase of the stock would be received at the court if filed before September 5, 1941, and outlining at length the terms to which such offers should conform. Three proposals were filed, one by Rogers. On September 8, 1941, the court made an order in which it found that only his offer met the terms stated in the order of June 30, 1941; that a written application had been made by parties beneficially interested in the estate for an independent expert appraisal of the stock; and that, as Rogers was interested in the estate as one of the executors, such an appraisal should be made; and it ordered that the executors cause the stock to be appraised by a certain appraisal company and that the matter be further continued to a date to be fixed by the court after the appraisal had been filed. Finally, on March 16, 1942, the court made the decree from which the appeal was taken. No copy of that decree is in the file, but in the report of the state referee, to which reference is hereinafter made, it is stated that in it the court denied the application of the three executors that it authorize and direct the transfer of the stock to Rogers and directed that the executors file a petition based upon § 4951 of the General Statutes, asking the court to appoint a disinterested person to sell it, at which sale Rogers or any other executor or executors might purchase it.

The plaintiff, one of the executors and also a legatee under the will of Bond, appealed to the Superior Court. In that court there were extended hearings, but the presiding judge died before reaching a decision. Thereafter, the parties stipulated that the matter should be referred to a state referee and that

the evidence and exhibits presented to the court might be used by him with the same effect as though introduced before him. The case was referred to a state referee, but in his report he went little further than to recite the proceedings before the Probate Court which we have reviewed above, adding only one fact material to the issues as argued before us: The application to the Probate Court for authority and direction to transfer the stock to Rogers was made in pursuance of an agreement, to which the executors and the residuary legatees of the estate were parties, that the stock would not be sold without submitting the terms of the sale to the court with notice to interested parties and after hearing. The plaintiff filed a remonstrance to the report. In it he asked to have the matter recommitted to the referee on the ground that he desired to present a claim of law that the Probate Court erred in denying the application to transfer the stock to Rogers without a finding that the offer was inadequate and not in the best interests of the estate. He also requested that various additions be made to the report, but these were based on certain exhibits which have been made a part of the record before us and, as far as material, have been used in reaching our decision. The Exchange Buffet Corporation, to which the interests of certain residuary legatees have been assigned, filed a demurrer to the remonstrance. The trial court sustained the demurrer, accepted the report and entered judgment dismissing the appeal. The parties appearing before us are the plaintiff and the Exchange Corporation.

Much of the difficulty presented in this case is due to the uncertainty as to the statutory basis upon which the executors made the application to the Probate Court for authority to make the transfer to

Rogers and to the very unusual method adopted by the court in dealing with it. When the application was made, there were two statutes authorizing courts of probate to order the sale of personal property of the estate of a deceased person. One provided: "The court of probate, before the final settlement of any estate, may order the sale of the credits and choses in action belonging thereto, and may at any time order the sale of personal estate . . . as it shall find for the interest of such estate, in such manner and after such notice as it shall judge reasonable, and such court, in making orders for the sale of such property, may order the same to be sold at public or private sale at the discretion of the person authorized to make such sale." General Statutes § 4944. The other statute provided: "The court of probate may, on the written application of an executor, administrator . . . upon hearing after public notice, authorize another person to sell any property belonging to such estate ordered sold. . . . Public notice of such sale shall be given, and at any sale so made the executor, administrator . . . may be a purchaser." General Statutes § 4951.

In *Beecher* v. *Buckingham*, 18 Conn. 110, decided in July, 1846, the issue involved the question whether one of two administrators had the power to assign a nonnegotiable chose in action which formed part of an estate. It was claimed by one of the parties (p. 116) that the administrators, even acting jointly, could not make a valid assignment of such a chose in action, "at least without the order of the court of probate." We held (p. 120) that title to the personal property of a deceased person vested in the executor or executors of his estate; that they could dispose of it at pleasure, "being responsible for the faithful execution of the trust"; that within this principle

fell choses in action, as well as other personal property; that one of two or more executors might make the sale as fully as if all joined in the act of transfer; and that the same principles applied to administrators. See *Buckingham's Appeal,* 60 Conn. 143, 159, 22 A. 509; *Blodgett* v. *Bridgeport City Trust Co.,* 115 Conn. 127, 144, 161 A. 83. The opinion in the *Beecher* case contains this statement (p. 121): "Ordinarily, a faithful representative would prefer collecting the debts due the estate, rather than to assign them to others."

At the session of the General Assembly in 1848, a statute, now a part of § 4944, was enacted. It gave courts of probate authority, before the final settlement of an estate, to order the sale of such of the credits and choses in action belonging to it "as they find it for the interest of said estate to have sold," in such manner and after such notice as the court deemed reasonable. Public Acts, 1848, Chap. 40. In the revision of the probate law in 1885, the statute took its present form by the addition of the words, "and may at any time order the sale of personal estate." Public Acts, 1885, Chap. 110, § 164. One can conceive various purposes which § 4944 might serve. For example, a situation might arise where persons interested in the estate might believe that, in the performance of his duty, an executor or administrator should sell certain personal property despite his unwillingness to do so; and they might under this statute seek an order of the Probate Court compelling him to act. See *Williams* v. *Taylor,* 81 Conn. 90, 70 A. 643. So, an executor may be confronted with the question whether he should sell personal property specifically bequeathed in order to pay debts of the estate; see *Hewitt* v. *Sanborn,* 103 Conn.

352, 373, 130 A. 472; and under the statute he could apply for an order which would determine that question. The enactment of the act of 1848, following so closely the decision in *Beecher* v. *Buckingham,* supra, suggests the principal purpose of the statute to be that it would enable an executor or administrator, by securing an order of sale, to protect himself against the claim that he had acted improperly, a claim with which he might otherwise be confronted, after the property had been sold, when he presented his account for allowance. We have reached a like conclusion with reference to § 4939 of the General Statutes, providing that probate courts "may authorize" executors, administrators and others occupying like positions to compromise claims, a power which they have entirely apart from the statute. *Griffin* v. *Sturges,* 131 Conn. 471, 480, 40 A. 2d 758. Whether the provision in § 4944 that the court might order the property to be sold "at public or private sale at the discretion of the person authorized to make such sale" justifies in any event an application for approval of a sale to a particular individual, we have no need to determine, for we are here concerned with the particular question of a transfer of property to an executor of the estate.

Section 4951 had its origin in an act passed in 1830 in substantially its present form but applicable only to sales of real estate; Public Acts, 1830, Chap. 25; in the Revision of 1875, the act was made applicable to "any estate," thus including personal property; Rev. 1875, p. 395; and it took its present form in the revision of the probate law made in 1885. Public Acts, 1885, Chap. 110, § 165. Aside from statutory authority, a purchase by an executor or administrator of real property of the estate is voidable at the instance of interested persons, at least unless he can

show that the transaction was in all respects fair and equitable. *Delaney* v. *Kennaugh,* 105 Conn. 557, 560, 136 A. 108; and see *Catanzaro* v. *Catanzaro,* 127 Conn. 478, 482, 18 A. 2d 350; Cleaveland, Hewitt & Clark, Probate Law & Practice, § 140. In *Filley* v. *Phelps,* 18 Conn. 294, 303, the rule was stated as applicable to a sale of personal property of an estate; in view of the fact that title to personal property is vested in the executor or administrator and he has a broad right to dispose of it for the purpose of administering the estate, it is somewhat difficult to see how a legatee or distributee can assert title to personal property even when retained by an executor or administrator to his own use, unless, indeed, it was specifically bequeathed; but upon his accounting for such property, a like principle requires that an executor or administrator so retaining personal property be required to establish that the sum paid into the estate for it represented its fair and true value.

The purpose of § 4951 was to provide a means by which an executor, administrator or other person holding a like position could make a purchase of the real property of the estate or retain personal property for his own use in consideration of money paid into it under such circumstances that the transaction would not thereafter be open to attack. That statute provided: "Public notice of such sale shall be given, and at any sale so made the executor, administrator . . . may be a purchaser." The statute cannot, in view of this provision, be interpreted to authorize a private sale to an executor or administrator with public notice of that sale, for that would largely destroy the protection to the estate which the law was designed to give. Indeed, had that been intended, the statute would naturally have included

a provision like that in § 4944, authorizing a private or public sale. We have said that "a sale of property at public auction after due notice is the legal synonym for a fair and advantageous sale." *Lawrence's Appeal,* 49 Conn. 411, 428. The statute could only have intended a public sale at which others than the executor or administrator might make offers, with a sale to the highest bidder. To construe § 4944 as authorizing the court to order a sale to an executor which might be a private sale without public notice would be to avoid the protection which, in such a situation, § 4951 was designed to give to the estate; indeed, such a construction would make entirely unnecessary the provisions of § 4951.

"It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." *Kepner* v. *United States,* 195 U. S. 100, 125, 24 S. Ct. 797, 49 L. Ed. 114, quoted in *Wardell* v. *Killingly,* 97 Conn. 423, 433, 117 A. 520; *Kelly* v. *Dewey,* 111 Conn. 281, 292, 149 A. 840. As we said in *Delaney* v. *Kennaugh,* 105 Conn. 557, 560, 136 A. 108, "Unless the method provided in § 5020 of the General Statutes is followed, a transaction by which an executor or administrator becomes a purchaser of property of the estate is voidable." The claim of the plaintiff that, as § 4951 referred only to "an executor, administrator," etc., and to a purchase by "the executor, administrator," it was not applicable as regards estates where there is more than one executor or administrator, in view of the provision in § 6568 of the General Statutes that words importing the singular number may be extended and applied to several persons or things, "deserves no answer at all." *Wells* v. *Cooper,* 57 Conn. 52, 57, 17

A. 281. The Probate Court was without jurisdiction to authorize and direct the transfer of the stock to Rogers under § 4944. That the application to it to do so was the result of an agreement among those interested would not give the court a jurisdiction which it did not have under the statutes. *Long* v. *Zoning Commission,* 133 Conn. 247, 252, 50 A. 2d 172; Conn. App. Proc., p. 42.

The application to the Probate Court to authorize and direct the transfer of the stock to Rogers sought the approval of a private sale, made without the public notice required by § 4951. The Probate Court was correct in regarding the application as not brought under that section, as it is evident that it did from the portion of the final decree directing the executors to proceed under that statute. Section 4951 provided that the Probate Court "may, on the written application of an executor, administrator" authorize another person to sell property of the estate. The initial step necessary to give the court jurisdiction under the statute was such an application; whether the executors in this case would proceed under it was for them to decide; see *Griffin* v. *Pratt,* 3 Conn. 513, 515; *Keifer* v. *Bridgeport,* 68 Conn. 401, 412, 36 A. 801; and the court had no authority to order them to do so. The trial court construed this portion of the order as being no more than an instruction to the executors that, if they desired to pursue proceedings under which one of them could acquire the property, they must proceed under this section. If that was all that was intended, the Probate Court could properly so state. If, on the other hand, the decree be construed as a mandatory direction to them to make an application under § 4951, the fact that this part of the decree would be void would not render errone-

ous the portion of it which denied the application to approve the transfer to Rogers. That decision was correct, because the court lacked authority to authorize and direct such a transfer under § 4944.[1]

Counsel for the Exchange Corporation have, since this case was argued, called our attention to the fact that § 4951 has been repealed by chapter 263 of the 1947 Supplement, which substitutes new provisions in place of a number of the sections of the General Statutes, but which only applies to sales of real estate. The decree of the Probate Court and the decision of the Superior Court upon the appeal from it were made before the act of 1947 became effective; and, in any event, § 4951 so far affected substantial rights that its repeal could not apply to pending actions. *Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415, 418, 17 A 2d 525. We have decided the case upon the statutes as they stood when the decree was made. We have no occasion to inquire whether the repeal of § 4951 has resulted in giving to § 4944 a broader scope than previously existed. Nor have we overlooked the fact that the involved affairs of the estate as disclosed in the record make exceedingly difficult its administration in such a way as to serve the best interests of those who have rights derived from the will of Harry S. Bond; but that fact did not give to the Probate Court a jurisdiction for which the statutes as they stood when the decree was made afforded no basis.

There is no error.

In this opinion the other judges concurred.

---

[1] We note in the brief of counsel for the Exchange Corporation a quotation from a memorandum which it stated the Probate Court filed with its final decree but which is not in the record, and in that memorandum the court stated that this was the conclusion to which it had finally come.