CHARLTON PRESS, INC., ET AL. *v.* JOHN L. SULLIVAN, TAX COMMISSIONER

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued October 6—decided October 28, 1965

*Robert Kapusta,* with whom were *William K. Bennett* and, on the brief, *Richard S. Bruchal,* for the appellants (plaintiffs).

*Ralph G. Murphy,* assistant attorney general, with whom, on the brief, were *Harold M. Mulvey,* attorney general, and *Walter T. Faulkner,* assistant attorney general, for the appellee (defendant).

House, J. In this case the plaintiffs are separate corporations, Charlton Press, Inc. and Charlton Publishing Corporation. The writ, summons and complaint describes the former as a Connecticut corporation and the latter as a New York corporation authorized to do business in this state. In a single complaint they alleged separate causes of action and separate claims for relief, although it does not appear that their respective claims for relief arose out of the same transaction or series of transactions. See Practice Book § 50. The record does not disclose that any objection was raised to this misjoinder but does disclose the hazards of disregarding the basic rules of practice and pleading. The state of the record requires us to consider separately the appeal of each corporation, and we do so, considering first the appeal of Charlton Publishing Corporation. In the interests of brevity, we will refer to that plaintiff as Publishing and the coplaintiff as Press.

The relatively narrow issue presented by Publish-

ing's appeal is determined by an interpretation of §§ 12-233 and 12-226 of the General Statutes and the predecessors of these two statutes in effect during the respective tax years ending January 1, 1943, through January 1, 1951.[1] The precise question is whether the three-year limitation provided in § 12-233 and its predecessors for the examination and correction of errors in corporation business tax

[1] "Sec. 12-233. PAYMENT OF TAX. EXAMINATION OF RETURNS. The taxes imposed under the terms of this part shall be due and payable upon the last day upon which a return may be filed without penalty under the terms of section 12-222. Upon the filing of such return, the full amount of the tax payable, as the same is computed by the taxpayer, shall be paid to the tax commissioner in cash or by check, draft or money order drawn to the order of the tax commissioner. The commissioner shall, within three years after the due date for the filing of such return or, in the case of a completed return filed after such due date, within three years after the date on which such return was received by him, examine it and, in case any error is disclosed by such examination, shall, within thirty days after such disclosure, notify the taxpayer thereof. Within thirty days of the mailing of such notice, the taxpayer shall pay to the commissioner, in cash or by check, draft or money order drawn to the order of the tax commissioner, any additional amount of tax shown to be due by the corrected return or shall be paid by the state treasurer, upon order of the comptroller, any amount shown to be due it by such corrected return. The failure of the taxpayer to receive any notice required by this section shall not relieve him of the obligation to pay the tax assessed under the terms of this part or any interest or penalties thereon. When, before the expiration of the time prescribed in this section for the examination of the return or the assessment of the tax, both the tax commissioner and the taxpayer have consented in writing to such examination or assessment after such time, the return may be examined and the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. The tax commissioner may also in such a case waive the statute of limitations against a claim for refund by such taxpayer."

"Sec. 12-226. CORRECTION OF RETURNS; ADDITIONAL TAX; REFUNDS. Any company whose return to the director of internal revenue has been amended or whose income, profits or earnings are changed, adjusted or corrected for any income year by any official of the

returns applies to the assessment and collection of an additional tax determined by the state tax commissioner to be due as a result of changes, adjustments or corrections by any official or agency of the United States government in the subject corporation's returns to the federal collector of internal revenue in accordance with the provisions of § 12-226 and its predecessors.

United States government, or any agency thereof, in any respect affecting the tax imposed by this part, shall, within ninety days after having filed the amended return or received notification of such change, adjustment or correction, make an amended return to the commissioner or make an affidavit disclosing such changes or adjustments and thereafter shall promptly furnish to the commissioner any information, schedules, records, documents or papers relating to such change, adjustment or correction as he requires. Such ninety-day period may be extended by the commissioner upon due cause shown. If, upon examination, the commissioner finds that the taxpayer is liable for the payment of an additional tax, he shall, within a reasonable time from the receipt of such amended return or affidavit, notify the taxpayer of the amount of such additional tax, together with interest thereon computed at the rate of one-half of one per cent per month, or any fraction thereof, from the date when the original tax became due and payable. Within thirty days of the mailing of such notice, the taxpayer shall pay to the commissioner, in cash or by check, draft or money order, drawn to the order of the tax commissioner, the amount of such additional tax and interest. If, upon examination of such amended return or affidavit and related information, the commissioner finds that the taxpayer has overpaid the tax due the state and has not received from or been allowed by the United States government, or any agency thereof, a credit or a benefit, as a deduction or otherwise, for or by reason of such overpayment, the taxpayer shall be paid by the state treasurer, upon order of the comptroller, the amount of such overpayment."

For statutory history of General Statutes § 12-233, see: Cum. Sup. 1935, § 431c; Sup. 1943, § 298g; Sup. 1947, § 300i; Rev. 1949, § 1913; Cum. Sup. 1951, § 409b; Cum. Sup. 1953, § 894c; Cum. Sup. 1955, § 1102d; Public Acts 1957, No. 560, § 7.

For statutory history of General Statutes § 12-226, see: Cum. Sup. 1935, § 426c; Sup. 1937, § 257d; Cum. Sup. 1939, § 359c; Sup. 1943, § 296g; Rev. 1949, § 1907; Sup. 1949, § 199a; Cum. Sup. 1951, § 408b; Cum. Sup. 1955, § 1100d; Public Acts 1957, No. 489, § 1 and No. 560, § 5.

The case of Publishing was decided in the Court of Common Pleas upon a stipulation of facts which recites that, contrary to the designation in the writ and summons, the corporation is a Connecticut corporation. According to the stipulation, Publishing timely filed its corporation business tax returns for the respective fiscal years ending January 1, 1943, to and including January 1, 1951. Within three years after the defendant tax commissioner received each return, he examined it for errors and made no corrections. On or about October 21, 1957, Publishing was notified by the federal bureau of internal revenue that adjustments and changes had been determined in respect to its net taxable income for each of the fiscal years in dispute. Publishing did not notify the tax commissioner of these adjustments and changes and did not make any amended returns or file any affidavits disclosing to the tax commissioner the federal adjustments and changes. In August, 1959, the tax commissioner received information from the federal bureau of internal revenue that it had determined adjustments and changes in Publishing's net taxable income for the years in question, whereupon the tax commissioner requested Publishing to file affidavits disclosing the federal adjustments and changes. Publishing refused to file such affidavits. In October, 1959, an employee of the tax commissioner secured copies of the federal adjustments and changes, and, on the basis of them, the tax commissioner recomputed the state tax and billed Publishing for the additional taxes. It paid the additional taxes under protest and brought this action seeking a return of the moneys paid under protest and a declaratory judgment that it was not indebted to the state for the years in question. The trial court rendered judgment for

the tax commissioner and found that the collection of the additional taxes was legal, warranted and correct, that Publishing was not entitled to a return of any of the money paid under protest and that it was indebted to the state for the tax years in question.

It is the claim of Publishing that the tax commissioner is barred from collecting any additional tax by the provision now contained in § 12-233 of the General Statutes which requires the commissioner within three years after the due date for filing a return to examine it and, in case any error is disclosed, notify the taxpayer within thirty days after such disclosure.

We find no merit in this contention. By its express terms, that three-year limitation applies to examination of a corporation's annual tax return for any errors which may be disclosed by such examination. It is obvious that an examination of the original state tax return will not disclose any changes, adjustments or corrections by the federal tax authorities in the federal return. On the other hand, § 12-226 of the General Statutes logically requires an amended return or affidavit from the taxpayer after such changes have been made by the federal agency, and the same section expressly provides under such circumstances a different limitation of time within which the tax commissioner must notify the corporation of the amount of any additional tax. This limitation is "within a reasonable time." It is elementary that statutes should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment. *State ex rel. Sloane* v. *Reidy,* 152 Conn. 419, 424, 209 A.2d

674. "It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." *Kepner* v. *United States,* 195 U.S. 100, 125, 24 S. Ct. 797, 49 L. Ed. 114 (quoted in *Oles* v. *Furlong,* 134 Conn. 334, 342, 57 A.2d 405).

Nor does the legislative history of § 12-226 support Publishing's contentions. Until 1943 there were combined in a single section of the statutes (Cum. Sup. 1939, § 359e) a requirement (now General Statutes § 12-225) that a corporation file a supplemental return to report any items erroneously or intentionally omitted in its original return and a requirement (now General Statutes § 12-226) that a corporation make an amended return to report any change or adjustment made by the federal tax authorities. In 1943 the legislature in § 298g of the 1943 Supplement for the first time provided a three-year limitation for the commissioner's examination of an original return. This provision is now General Statutes § 12-233. At the same session the legislature separated § 359e of the 1939 Cumulative Supplement into two statutes. The portion concerning supplemental returns to report errors or omissions (now General Statutes § 12-225) became a separate section of the statutes as § 295g of the 1943 Supplement and for the first time included a provision that supplemental returns must be filed within three years from the due date of the original return. The portion of § 359e requiring an amended return to report changes by any federal agency was amended and enacted as a separate section of the statutes (Sup. 1943, § 296g [now General Statutes § 12-226]), and for the first time made provision for the time within which the tax commissioner must notify the

corporation of any additional tax. The time fixed in § 296g of the 1943 Supplement was not three years as the General Assembly provided in §§ 298g and 295g but was expressly provided to be "within a reasonable time from the receipt of such amended return." That "reasonable time" limitation has continued without change. In the present case, Publishing failed to comply with the statutory requirement that it file an amended return or affidavit disclosing the federal changes. Owing to its own default in not filing amended returns or affidavits, not even the reasonable time limitation on action by the tax commissioner has begun to run.

While further discussion of Publishing's contentions is unnecessary, we are constrained to comment on the reliance which its brief places upon quotations at length from the statements of witnesses appearing before legislative committees considering the statutes here involved. "[D]iscussions and statements made before a committee of a legislative body, or in debate before that body, are not admissible in proof of a legislative intention in an Act passed by the body, for the reason that it is impossible to determine what effect the individual discussion had upon the action taken." *Hartford* v. *Connecticut Co.,* 107 Conn. 312, 341, 140 A. 734; *Baker* v. *Norwalk,* 152 Conn. 312, 316, 206 A.2d 428. Such statements, inadmissible in evidence, do not become competent for consideration by inclusion in the arguments of a brief.

On the appeal taken by Charlton Publishing Corporation there is no error.

We turn now to the appeal taken by Press. There nowhere appears in the record either a stipulation of facts or a finding upon the basis of which the decision of the trial court may be tested. We note

that the judgment, as it appears in the printed record, contains the following statement: "[S]aid plaintiff, Charlton Publishing Corporation, and the defendant filed a Stipulation as to the judgment, as follows: 'The parties stipulate that the judgment of Court in the case of the co-plaintiff *Charlton Publishing Corporation* vs. *John J.* [sic] *Sullivan, Tax Commissioner,* will be determinative upon both plaintiff and defendant so far as the judgment sought by the co-plaintiff, Charles [sic] Press, Inc. is concerned; substantially the same essential facts exist in, and the same statutes apply to, the relief sought by the latter co-plaintiff' ". This stipulation is not otherwise contained in the record, but in the interests of accuracy we have taken judicial notice of the original stipulation in the clerk's files and find that the recital in the judgment is indeed correct and that the stipulation for judgment in the case of Press was not signed by Press. Rather, Publishing and the tax commissioner were the only parties to the stipulation, which purported to provide what judgment should be rendered in the case of Press. Upon the basis of this stipulation for judgment, to which Press was not a party, the trial court rendered its judgment in the case of Press.

On this appeal Press has filed an assignment of errors which is verbatim the same as the assignment of errors filed by Publishing, notwithstanding the fact that the Publishing case was determined on a stipulation of facts, whereas there was no such stipulation in the case of Press. Nor does it appear that the court heard any evidence concerning the claims of Press. There is no assignment of error, however, directed to the action of the trial court in rendering judgment against Press on the basis of a stipulation for judgment to which Press was not

a party. We are not bound to consider any error not assigned nor at any time raised on an appeal. Practice Book § 652; *Shakro* v. *Haddad,* 149 Conn. 160, 163, 177 A.2d 221; Maltbie, Conn. App. Proc. § 167. The lack of such an assignment of error is fatal to any successful appeal by Press. Nevertheless, we have considered the assignments of error which Press has filed, although under the circumstances we are confined to the material facts which appear from the complaint, the answer and the judgment. *Postemski* v. *Watrous,* 151 Conn. 183, 184, 195 A.2d 425; *Gitlitz* v. *Davis,* 146 Conn. 280, 281, 150 A.2d 213; *Mendrochowicz* v. *Wolfe,* 139 Conn. 506, 509, 95 A.2d 260. Applying to these more limited facts the same principles which we have discussed on Publishing's appeal, we are in no position to do other than affirm the judgment as it applies to Press.

There is no error.

In this opinion the other judges concurred.