MAE WHITFIELD, ADMINISTRATRIX (ESTATE OF JULIUS C. WHITFIELD), ET AL. v. EMPIRE MUTUAL INSURANCE COMPANY ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued November 6, 1974—decision released January 21, 1975

*Philip R. Shiff,* for the appellant (named defendant).

*Henry W. O'Brien,* for the appellee (defendant Atlantic Mutual Insurance Company).

MacDonald, J. This case arose out of a one-car accident involving an automobile operated by Herman Cooper, hereinafter Cooper, and owned by C. Kenneth Theroux, an automobile repairer, resulting in the death of the plaintiff's decedent, Julius C. Whitfield, and in serious injuries to the plaintiff Joseph Whitfield, both of whom were passengers in the automobile.

The present action was brought by the plaintiffs against the two defendant insurance companies,

Empire Mutual Insurance Company, hereinafter Empire, as liability insurer of Cooper, and Atlantic Mutual Insurance Company, hereinafter Atlantic, as liability insurer of Theroux, under § 38-175 of the General Statutes.[1] The trial court, in granting the plaintiffs' motion for summary judgment, ruled that § 14-60,[2] as in effect at the time of the accident, required a conclusion that the coverage afforded to Cooper by Empire's insurance policy was primary insurance and that afforded by Atlantic was excess insurance, and judgment was rendered accordingly, from which judgment the defendant Empire has appealed to this court.

Although Empire's assignments of error attacked three paragraphs of the finding and the court's

[1] "[General Statutes] Sec. 38-175. LIABILITY OF INSURER UNDER LIABILITY POLICY. Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. No such contract of insurance shall be canceled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

[2] "[General Statutes] Sec. 14-60. USE OF DEALERS' AND REPAIRERS' PLATES. No dealer or repairer shall rent or allow or cause to be

refusal to include therein four paragraphs of the draft finding, its counsel conceded in oral argument that there is no real dispute as to the facts found which are relevant to the issues to be decided and which are hereinafter set forth.

On September 21, 1968; Cooper was operating an automobile owned by Theroux when it was involved in a collision which resulted in the death of Julius C. Whitfield and injuries to Joseph Whitfield. Cooper had left his car at Theroux's automobile repair shop for repairs and Theroux had loaned Cooper the car involved in the accident as a temporary substitute for the one being repaired. As a result of the collision, the plaintiff Mae Whitfield, administratrix, obtained a judgment against

---

rented, or operate or allow or cause to be operated for hire, or use or allow or cause to be used for the purpose of conveying passengers or merchandise or freight for hire, any motor vehicle registered under a general distinguishing number and mark. No dealer or repairer shall loan a motor vehicle or number plates or both to any person except for the purpose of demonstration of a motor vehicle, or when a motor vehicle owned by such person is undergoing repairs, or when such person has purchased a motor vehicle, the registration of which by him is pending, and in any case for not more than fifteen days in any year, provided the person operating such loaned motor vehicle or a motor vehicle bearing such loaned number plates shall furnish proof to such dealer or repairer that he has liability and property damage insurance which will cover any damage to any person or property caused by the operation of such loaned vehicle for which the operator would have been liable if he had also been the owner. Such operator's insurance shall become the prime coverage. Every dealer and repairer shall keep a record of each loaned number plate showing the date loaned, date returned and the name and operator's license number of the person operating any vehicle with such loaned number plates. Such record shall be available during business hours for examination by any police officer or inspector designated by the commissioner of motor vehicles. Any licensed dealer or repairer may operate or cause to be operated by a bona fide employee such motor vehicle for his personal use and for use in connection with his business as a dealer or repairer."

Cooper in the amount of $22,000, and the plaintiff Joseph Whitfield obtained a judgment against Cooper in the amount of $27,000.

At the time of the accident there was in full force and effect a liability insurance policy issued by Empire to Cooper covering his liability with respect to his operation and use of his automobile or any nonowned automobile, subject to the provisions and conditions of the policy, with $20,000 limits of liability for each person and each occurrence. An express condition of the policy provided that "the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."[3] It is not disputed that the automobile involved in the accident was being operated by Cooper as a "temporary substitute automobile" within the meaning of the Empire policy. At the time he borrowed Theroux's automobile, Cooper signed an agreement which contained a specific reference to his coverage under the Empire policy.[4]

Also in full force and effect at the time of the accident was a liability insurance policy issued by Atlantic to Theroux which expressly covered the

---

[3] "Part I — Liability . . . Other Insurance: If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss, provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

[4] The agreement read, in relevant part, as follows: "I am currently insured under an Automobile Liability Policy issued to me by the Empire Mutual Insurance Company with maximum limits as follows: $20-20-Bodily Injury; 5000-Property Damage."

liability of Cooper with respect to his operation of the automobile owned by Theroux with $100,000/$300,000 limits and contained the statement that such coverage was "primary insurance."

On the basis of the foregoing facts, the court concluded that § 14-60 of the General Statutes required that the Empire policy be the primary coverage, that it governed any inconsistency in the Empire policy, that it required that the coverage afforded to Cooper under the Atlantic policy be considered as excess insurance and that the statute, as thus interpreted, is not unconstitutional. Judgment was rendered accordingly for the plaintiffs to recover from the defendant Empire a total of $20,000, plus interest and costs, and from the defendant Atlantic a total of $29,000, plus interest and costs. It is from this judgment that the defendant Empire has appealed, making the basic claim that the court erred in holding that § 14-60 required a conclusion that Empire's policy afforded primary coverage and Atlantic's excess coverage with respect to the judgments sued on, contrary to the specific provisions of the two policies, and making the further claim that the statute, as thus construed, is unconstitutional.

It is uncontroverted that, as found by the trial court, on the basis of the specific provisions of the insurance policies, the defendant Atlantic's coverage—afforded to Cooper with respect to his liability to the plaintiffs—was primary and the defendant Empire's coverage was excess. It appears to be equally clear that § 14-60 mandates that the opposite effect be given to the coverage afforded by the two policies, namely that Empire's coverage was, by statute, primary and Atlantic's

excess. After requiring that "the person operating such loaned motor vehicle . . . shall furnish proof to such . . . repairer that he has liability . . . insurance which will cover any damage to any person . . . caused by the operation of such loaned vehicle for which the operator would have been liabile if he had also been the owner," the statute states unequivocally: *"Such operator's insurance shall become the prime coverage."* (Emphasis added.) By adding these words the legislature obviously sought to eliminate any confusion or uncertainty as to which carrier has primary coverage in a situation such as this.

The language is clear and unambiguous and requires no interpretation. "The words of a statute are to be interpreted in their natural and usual meaning unless the context indicates that a different meaning was intended. By our statute [General Statutes § 1-1] words and phases are to be construed according to the commonly plain usage of language." *Brown* v. *New Haven Taxicab Co.,* 92 Conn. 252, 254, 102 A. 573; *Hope* v. *Cavallo,* 163 Conn. 576, 580, 316 A.2d 407. The requirement that the borrowing operator of the substitute automobile furnish proof to the repairer of liability coverage separate and distinct from that afforded under the repairer's policy, as Cooper did here, further strengthens the conclusion reached by the trial court.

Since Empire's policy was issued in New Haven, and shows the address of its named insured, Cooper, to be New Haven and shows that the automobile insured would be principally garaged there, the conclusion is inescapable that it was intended to have its operative effect in Connecticut and that it must be construed in the light of the Connecticut

law as it existed at the time of the issuance of the contract of insurance. "The general rule is that the validity and the construction of a contract are determined by the law of the place where the contract was made. But if the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, our rule is that the law of the place of operative effect or performance governs its validity and construction." *Breen* v. *Aetna Casualty & Surety Co.*, 153 Conn. 633, 637, 220 A.2d 254. See also *Jenkins* v. *Indemnity Ins. Co.*, 152 Conn. 249, 253, 205 A.2d 780; *Graham* v. *Wilkins*, 145 Conn. 34, 40, 138 A.2d 705; *Levy* v. *Daniels' U-Drive Auto Renting Co.*, 108 Conn. 333, 338, 143 A. 163. By doing business and issuing policies in Connecticut, Empire subjected itself to the applicable Connecticut statutes including, of course, the provisions of § 14-60. See 19 Appleman, Insurance Law and Practice § 10322, pp. 11–13, and the authorities cited therein.

" 'The provisions of a statute applicable to the relationship of parties or their contracts not only should be construed to carry out the legislative intent but must, unless the provisions of other statutes, with applicable provisions, are repealed expressly or by necessary implication, be interpreted in harmony therewith. . . . Contracts, especially of insurance, which more than most others are regulated by law, must be construed in the light of existing law and the legislative intent and purpose therein expressed.' *Standard Accident Ins. Co.* v. *Newman*, 47 N.Y.S.2d 804, 811, aff'd, 268 App. Div. 967, 51 N.Y.S. (2d) 767." *Williamson* v. *Massachusetts Bonding & Ins. Co.*, 142 Conn. 573, 577, 116 A.2d 169.

The privilege of engaging in the insurance business within this state necessarily implies the requirement of conforming to existing statutes, and our legislature frequently has exercised the power to modify the terms of coverage required of insurance policies issued in Connecticut. A noteworthy recent example is the provisions of chapter 690 of the General Statutes entitled "No–Fault Motor Vehicle Insurance" which drastically altered the concept of automobile insurance in Connecticut and, in effect, almost completely rewrote the provisions of coverage required of policies issued after January 1, 1973. Other examples are found in § 31-293a, entitled "No right against fellow employee; exception," and in § 52-572, entitled, in part: "Parental liability for torts of minors."

Empire has claimed that § 14-60, as construed by the trial court, cannot reasonably be justified as serving any legitimate public purpose and effects a discrimination which is contrary to the constitutional requirements of due process and equal protection of the laws. As we recently pointed out, "[i]t is well settled that a plaintiff who attacks a statute on constitutional grounds has no easy burden." *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53. This burden was well summarized, with citations which have been omitted here for the sake of brevity, in *Amsel* v. *Brooks,* 141 Conn. 288, 294–95, 106 A.2d 152: "When the constitutionality of legislation is in question, it is the duty of the court to sustain it unless its invalidity is beyond a reasonable doubt. . . . It is a rule of statutory construction, however, that courts are bound to assume that the legislature, in enacting a particular law, did so upon proper motives and to accomplish a worthy objective. . . . Furthermore,

courts must, if possible, construe a law so that it is effective.. . . . It is to be presumed that legislatures do not deliberately enact ineffective and unconstitutional laws."

Justification for the exercise of the police power clearly extends to matters of public convenience. "Legislation under the police power of the States is not confined to public health, safety or morality, but may extend to matters in the interest of the public welfare or convenience. . . . 'A large discretion is necessarily vested in the legislature to determine not only what the interests of public convenience and welfare require, but what measures are necessary to secure such interests. . . . The legislative department is the judge, within reasonable limits, to determine what public convenience and public welfare require, and the wisdom of its legislation is not the concern of the courts. . . .'" *Silver* v. *Silver,* 108 Conn. 371, 376–77, 143 A. 240.

The inclusion by the legislature of the unambiguous directive that "[s]uch operator's insurance shall become the prime coverage" clearly indicates an effort on its part to eliminate any confusion or uncertainty as to which of several insurance carriers in a situation such as this has the prime coverage. It cannot be doubted that such clarification is "in the interest of public convenience" by serving to avoid the delay and expense to policyholders and, indeed, to innocent third parties and the general public, from extended litigation between insurance carriers with conflicting policy provisions.

There is no error.

In this opinion the other judges concurred.