## Mark Moscone v. John R. Manson, Commissioner of Correction

Bogdanski, C. J., Peters, Healey, Parskey and Armentano, Js.

Argued June 11—decision released July 28, 1981

*L. D. McCallum,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Ellen B. Lubell,* habeas corpus attorney, with whom, on the brief, were *Basil T. Tsakonas* and *Jerrold H. Barnett,* assistant public defenders, for the appellee (plaintiff).

Peters, J. This is a petition for habeas corpus challenging the calculation of the petitioner's statu-

tory good time credits. The state has appealed from the judgment of the trial court ordering that these credits be calculated according to the law in effect at the time of the petitioner's resentencing, General Statutes § 18-7a, rather than the law in effect at the time of his original sentencing, General Statutes § 18-7.

The parties have stipulated to the following facts: The petitioner, Mark Moscone, was sentenced, on July 19, 1974, to a term of imprisonment of not less than nine years nor more than eighteen years for the crime of rape. Upon appeal to this court, the petitioner's conviction was set aside and the case was remanded for a new trial. *State* v. *Moscone,* 171 Conn. 500, 370 A.2d 1030 (1976). Thereafter, the petitioner pleaded guilty to the same offense, and was, on April 12, 1977, resentenced to a term of imprisonment of not less than seven nor more than fourteen years. The defendant, John R. Manson, the commissioner of correction, has calculated the petitioner's current sentence as if it had commenced on July 19, 1974, the date of the original sentence. The petitioner is entitled to additional statutory good time credits if his sentence is calculated according to the rules provided by General Statutes § 18-7a, which went into effect on October 1, 1976, after the date of his original sentence but prior to the date of his resentence.

The governing statutes are, on the one hand, General Statutes §§ 18-7 and 18-7a, and, on the other hand, General Statutes § 53a-38. For present purposes, the two former sections are notable because they prescribe different formulae by which to calculate good time credit depending upon whether a

prisoner was sentenced before or after October 1, 1976.[1] In *Frazier* v. *Manson,* 176 Conn. 638, 651–52, 410 A.2d 475 (1979), we held that this difference in treatment had a sufficiently rational basis to withstand constitutional attack. The latter section, § 53a-38, does not, in terms, address good time credits. It provides, in subsection (c): "When a sentence of imprisonment that has been imposed on a person is vacated and a new sentence is imposed on such a person for the same offense or for an offense based upon the same act, the new sentence shall be calculated as if it had commenced at the time the vacated sentence commenced, and all time served under or credited against the vacated sentence shall be credited against the new sentence." Credit for time previously served is constitutionally mandated by the double jeopardy

[1] General Statutes § 18-7 provides in part: "POWERS AND DUTIES OF WARDEN. PUNISHMENT AND REWARD OF INMATES. The warden shall manage the Connecticut Correctional Institution, Somers, subject to the direction of the commissioner of correction, and he shall keep all the prisoners employed in such labor as the commissioner orders, during the term of their imprisonment. He shall also keep a record of any punishment inflicted upon a prisoner, showing its cause, mode and degree, and a like record of the conduct of each prisoner. Any prisoner may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence, as follows: Sixty days for each year, and pro rata for a part of a year, of a sentence which is not for more than five years; and ninety days for the sixth and each subsequent year, and pro rata for a part of a year, and, in addition thereto, five days for each month as a meritorious time service award which may be granted in the discretion of the warden and the commissioner for exemplary conduct and meritorious achievement; provided any serious act of misconduct or insubordination or persistent refusal to conform to institution regulations occurring at any time during his confinement in said prison shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all or any portion of the time earned. Said commutation of sentence shall apply to any prisoner transferred from the Connecticut Correctional Institution, Somers, to the Connecticut Correctional Institution,

clause of the fifth amendment of the United States constitution which is enforceable in state courts through the fourteenth amendment. *North Carolina* v. *Pearce,* 395 U.S. 711, 718–19, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); *Benton* v. *Maryland,* 395 U.S. 784, 794–96, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

The issue raised by the present litigation is not § 53a-38's provision of credits for time previously served, a provision which can readily be accommodated to either version of good time credits. Rather, the defendant commissioner argues that the opening words of § 53a-38 (c) require that, for all purposes, and not just in relation to time-served credits, a resentence "shall be calculated as if it had commenced at the time the vacated sentence

Cheshire. When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section. . . ."

General Statutes § 18-7a provides: "GOOD CONDUCT CREDIT FOR PRISONERS SENTENCED ON AND AFTER OCTOBER 1, 1976. Any person sentenced to a term of imprisonment, on and after October 1, 1976 and while still serving such sentence whether such sentence is for a definite, indefinite or indeterminate term, and regardless of the institution wherein the prisoner is confined may, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a commutation or diminution of his sentence in the amount of ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and fifteen days for each month, and pro rata for a part of a month, for the sixth and each subsequent year of a sentence of more than five years. In the case of an indeterminate sentence, such credit shall apply to both the minimum and maximum term. In the case of an indefinite sentence, such credit shall apply to the maximum term only. Any act of misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such credit by the commissioner or his designee."

For crimes committed after July 1, 1981, § 18-7a (b) now provides a new and more limited calculation of good time credit.

commenced." The trial court refused to accord so expansive a reading to § 53a-38, and we agree with its interpretation.

It is true that, read literally, § 53a-38 appears to adopt an unconditional principle of relation back for all vacated sentences. It is also true that this court will not ordinarily construe a statute whose meaning is plain and unambiguous. *Delevieleuse* v. *Manson,* 184 Conn. 434, 438–39, 439 A.2d 1055 (1981); *Frazier* v. *Manson,* supra, 642; *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 29, 357 A.2d 498 (1975). This rule of statutory construction does not apply however if, as in this case, a literal reading places a statute in constitutional jeopardy. We are bound to assume that the legislature intended, in enacting a particular law, to achieve its purpose in a manner which is both effective and constitutional. *Wagner* v. *Connecticut Personnel Appeal Board,* 170 Conn. 668, 674, 368 A.2d 20 (1976); *Whitfield* v. *Empire Mutual Ins. Co.,* 167 Conn. 499, 507–508, 356 A.2d 139 (1975); *Amsel* v. *Brooks,* 141 Conn. 288, 295, 106 A.2d 152, appeal dismissed, 348 U.S. 880, 75 S. Ct. 125, 99 L. Ed. 693 (1954).

The constitutional problem posed by § 53a-38 (c), if read as the defendant commissioner proposes, is best illustrated by an examination of three factually related hypothetical cases. Assume that, on April 12, 1977, three prisoners were sentenced to identical prison terms upon conviction of identical crimes. Prisoner A, if this is his initial conviction for this offense, is unaffected by § 53a-38 (c) and is entitled to good time calculated according to § 18-7a. Prisoner B's case differs from that of prisoner A because prisoner B was previously sentenced under

a conviction vacated upon appeal, has now been resentenced and has commenced serving his sentence. If prisoner B was admitted to bail, and therefore never taken into custody, during the time that his trial and his appeal were pending, then he too is unaffected by § 53a-38 (c) and entitled to good time calculated according to § 18-7a. This result follows from the conjunction of language in two subsections of § 53a-38. Under § 53a-38 (c), "the new sentence shall be calculated as if it had commenced *at the time the vacated sentence commenced*" (emphasis added), while under § 53a-38 (a), a sentence commences only "when the prisoner is received in the custody or institution to which he was sentenced." Prisoner B, since his vacated sentence never commenced, does not fall within § 53a-38 (c). Prisoner B's case is thus statutorily indistinguishable from that of prisoner A. Prisoner C's case resembles that of prisoner B because he too was previously sentenced under a conviction subsequently vacated upon appeal. Prisoner C may, however, be subjected to different treatment, if he was incarcerated while his appeal was pending, because then he indeed did commence to serve the sentence subsequently vacated. According to the defendant commissioner, the fact that prisoner C commenced serving time necessarily invokes § 53a-38 (c), and that subsection ineluctably relegates prisoner C to good time credits calculated according to § 18-7 rather than § 18-7a. This result follows regardless of the reason for denial of bail to prisoner C. The prisoner who was financially able to delay incarceration pending appeal is, according to this construction of § 53a-38 (c), afforded more generous calculation of good time

credits than is the prisoner who, for reasons of indigency, could not make bond.

Just before the turn of the century, Anatole France commented on "the majestic equality of the laws, which forbid rich and poor alike to sleep under the bridges, to beg in the streets, and to steal their bread." The Red Lily, p. 95 (Stephens translation) (1896). Today, although poverty is not in and of itself a "suspect classification" for the purposes of the equal protection clauses of the federal and the state constitutions,[2] constitutional principles of basic fairness do impose limitations upon the power of a state legislature to enact statutes that directly discriminate between the rich and the poor. See Tribe, American Constitutional Law (1978) §§ 16-33 to 16-57. In *Frazier* v. *Manson,* supra, we upheld the rationality of a comprehensive revision of the good time credit system, although it discriminated among prisoners depending upon the date of their sentencing. But that discrimination did not single out for unfavorable treatment those who were indigent. Just as the state may not constitutionally deprive a poor person of reasonable access to the courts in criminal or quasi-criminal proceedings; see *Little* v. *Streater,* 452 U.S. 1, 17, 101 S. Ct. 2202, 68 L. Ed. 2d 627 (1981); *Griffin* v. *Illinois,* 351 U.S. 12, 19, 76 S. Ct. 585, 100 L. Ed. 891 (1955); or make "maximum confinement [after conviction] contingent upon one's ability to pay"; *Williams* v. *Illinois,* 399 U.S. 235, 242, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970); so a state, once it elects to give any prisoners good time credit, cannot constitutionally

---

[2] U.S. Const., amend. XIV § 1; Conn. Const., art. I § 20.

give less credit to those who lack the financial resources to be at liberty while their appeal is pending.[3]

In order to avoid constitutional difficulties, therefore, we construe § 53a-38 (c) as did the trial court, as anticipating the constitutional mandate of *North Carolina* v. *Pearce*. That case rests, the Supreme Court held, 395 U.S. at 721, "upon the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." The earlier sentence, now vacated, is void except that credit must be given under the new sentence for time served under the earlier one. Id., 718. Viewed from the perspective of *North Carolina* v. *Pearce,* the operative center of § 53a-38 (c) is its final clause that "time served . . . shall be credited," and the earlier language is intended only to identify what prior time is eligible for the credit. In other words, to assure a prisoner the full credit for time served to which *North Carolina* v. *Pearce* constitutionally entitles him, his sentence must be calculated to take into account "the time when the vacated sentence commenced" which is when the prisoner actually entered into custody under § 53a-38 (a).[4] So construed, § 53a-38 (c) relates

[3] Although the record does not expressly indicate the petitioner's indigency, we can infer that fact from his continued legal representation by public defenders.

[4] A closely parallel provision in the New York Penal Code, § 70.30.5, has been interpreted, in an attached commentary, as follows: "Subdivision 5 grants credit for time served . . . when a new sentence is imposed in its stead."

The Model Sentencing and Corrections Act (U.L.A. 1978) provides similarly, in § 3-502 (e): "If a sentence is set aside and the offender is reprosecuted or resentenced for the same offense or for another offense based on the same conduct, he must be given credit against his new sentence for all time served pursuant to the prior sentence which has not been credited against another sentence."

Our research has turned up no instance of statutory linkage

only to credit for time served pursuant to the vacated sentence and is irrelevant to any other statutory credit.[5]

Determination of statutory good time credits depends upon the date of a prisoner's valid sentence in relation to the provisions of §§ 18-7 and 18-7a. We hold that the operative date of the petitioner's sentence, under these statutes, was April 12, 1977. He is therefore entitled to good time credits calculated according to § 18-7a.

There is no error.

In this opinion BOGDANSKI, C. J., PARSKEY and ARMENTANO, Js., concurred.

ARTHUR H. HEALEY, J. (concurring). I concur in the result reached by the majority. I write separately to set forth that I find no "constitutional problems posed by § 53a-38 (c), if read as the defendant commissioner proposes," nor do I believe, as does the majority, that there is any necessity "to avoid constitutional difficulties" in construing § 53a-38 (c) in the context of this appeal. Additionally, *North Carolina* v. *Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), need not be imported into the disposition of this appeal.

This appeal presents a straightforward question of statutory construction. We have recently stated

between credit for time served and good time credit. In the Model Sentencing and Corrections Act, different types of credits are independently codified in different subsections of § 3-502.

[5] We note that, in addition to separate good time credits, the legislature has provided presentence confinement credit and good conduct credit for time served "in a community correctional center" by a person who "was denied or was unable to obtain bail." General Statutes §§ 18-98 and 18-98c.

that "[i]n interpreting 'the language of a legislative enactment, "[w]e are confined to the intention which is expressed in the words which the legislature has used." [Citation omitted.] " 'The intention of the legislature is found not in what it meant to say, but in the meaning of what it did say.' " ' " *Delevieleuse* v. *Manson,* 184 Conn. 434, 438, 439 A.2d 1055 (1981); *Frazier* v. *Manson,* 176 Conn. 638, 642, 410 A.2d 475 (1979).

Sections 53a-38, 18-7 and 18-7a appear to be plain and unambiguous. Section 53a-38 is concerned with the calculation of terms of imprisonment; subsection (c) of that section provides that when a sentence of imprisonment which has been imposed is vacated and a new sentence imposed, the "new sentence shall be calculated as if it had commenced at the time the vacated sentence commenced, and all time served under or credited against the vacated sentence shall be credited against the new sentence." This statute does not specifically apply to "good time"; it does not specify what type of "credit" it refers to. Sections 18-7 and 18-7a, which were construed by us in *Frazier* v. *Manson,* supra, apply specifically to "good time." All three of these statutes cover the same subject matter, i.e., credits against a person sentenced to a term of imprisonment, although, as pointed out, the ambit of § 53a-38 is much broader than that of either § 18-7 or § 18-7a. There is, however, no conflict between § 53a-38 and § 18-7a in this case. This is so because "[i]t is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or *another statute* which might otherwise prove controlling." (Emphasis added.) *Kepner* v. *United States,* 195

U.S. 100, 125, 24 S. Ct. 797, 49 L. Ed. 114 (1904), quoted in *Charlton Press, Inc.* v. *Sullivan,* 153 Conn. 103, 110, 214 A.2d 354 (1965), and in *Oles* v. *Furlong,* 134 Conn. 334, 342, 57 A.2d 405 (1948). "The provisions of one statute which specifically focus on a particular problem will always, in the absence of express contrary legislative intent, be held to prevail over provisions of a different statute more general in its coverage. See, e.g., *Kepner* v. *United States,* [supra, 125]." *General Electric Credit Corporation* v. *James Talcott, Inc.,* 271 F. Sup. 699, 705 (S.D.N.Y. 1966). Therefore, we need not reach, in this case, any question of constitutional difficulties that may be posed by § 53a-38, and a consideration of *Pearce* is not triggered.[1] This approach is consistent with our pronouncements that it is to be presumed that the legislature does not deliberately enact ineffective and unconstitutional laws; see, e.g., *Whitfield* v. *Empire Mutual Ins. Co.,* 167 Conn. 499, 507-508, 356 A.2d 139 (1975); *Amsel* v. *Brooks,* 141 Conn. 288, 294-95, 106 A.2d 152, appeal dismissed, 348 U.S. 880, 75 S. Ct. 125, 99 L. Ed. 693 (1954); and that the legislature, in enacting a statute, does so in view of existing relevant statutes intending that it be read with them so as to make one consistent body of law. *Cicala* v. *Administrator,* 161 Conn. 362, 365, 288 A.2d 66 (1971) and cases there cited.

---

[1] We have long held that "[c]onstitutional issues are not considered unless *absolutely necessary* to the decision of a case; *Crandall* v. *State,* 10 Conn. 339, 366 [1834]; 16 Am. Jur. 2d., Constitutional Law, §§ 111, 113 . . . ." (Emphasis added.) *State* v. *DellaCamera,* 166 Conn. 557, 560-61, 353 A.2d 750 (1974); see also *Harris* v. *McRae,* 448 U.S. 297, 307, 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980).