DONATO CIAMPITTIELLO, ADMINISTRATOR (ESTATE OF ALBERT J. CAMP) *v.* JOSEPH E. CAMPITELLO

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, JS.

Argued June 3—decided July 16, 1947

*Joseph P. Cooney,* with whom was *John W. Joy,* for the appellant (defendant).

*Thomas F. Gallivan, Jr.,* for the appellee (plaintiff).

ELLS, J. This case came to the Superior Court as an appeal from commissioners appointed by the Probate Court to receive and decide upon a claim which had been disallowed by the administrator. They allowed the claim, the Probate Court accepted their

report and the administrator appealed. Section 90 of the Practice Book requires that upon such an appeal the claimant shall, unless otherwise ordered, "file a statement of the amount and nature of his claim, and of the facts upon which it is based, which statement shall conform, as far as may be, in form and substance, to the requirements of a complaint brought to recover upon said claim in a civil action." The claimant, hereinafter called the defendant, duly filed a statement in which he alleged the following facts: He and his brother, the intestate, while attending the horse races at Pascoag, Rhode Island, each contributed $150 to a fund to be used by them jointly for the purpose of wagering in the pari-mutuel machines at the track, and they agreed that they would share equally in the profits and losses that might result. They were at this track five days and as a result of their betting the joint fund was increased to $2893, which on the last day of the adventure was in the custody of the brother. While they were returning to Hartford in an automobile the brother was killed in an accident and the money was found on his person. It is then alleged that one-half of the joint fund is the property of the defendant, that "no part of said debt" has been paid and that the administrator of the estate refuses to pay the claim.

The administrator demurred to the statement of claim on the ground that the law of Rhode Island and the rights arising under it cannot be enforced in our courts because they contravene the public policy of this state and violate its positive laws. The trial court sustained the demurrer, the defendant refused to plead further, judgment was entered and he has appealed to this court.

The defendant contends that he is not attempting to enforce a gambling contract; that his brother was a bailee of funds lawfully acquired in Rhode Island; and that the court need only inquire whether the decedent was holding money which belonged to the defendant. To establish his right to the fund he would necessarily have to prove the facts as a result of which it came into the possession of the deceased; and that would bring directly into the case the fact that it was the result of a joint gaming operation. In his statement of claim he placed before the court all the elements of the gambling adventure, and the simple fact is that the fund represented the profits resulting from successful bettings on horse racing.

The agreement to share the proceeds of the gaming was a legal contract where it was made. Parimutuel betting on horse races is lawful in Rhode Island, subject to certain limitations with which we are not here concerned. R. I. Gen. Laws (1938) Chap. 12, § 12; and amendments, Pub. Laws (1941–42) Chap. 1212, Art. XI, § 1; (1943–44) Chap. 1449, § 1. The defendant does not claim that such wagering is lawful in Connecticut but contends that our public policy does not prevent the enforcement of the claim by our courts.

It is a general principle of our law that a plaintiff may enforce in the courts of this state any legal right of action which he may have, whether it arises under our own law or that of another jurisdiction. A well-established exception to this general rule is that we will not enforce the law of another jurisdiction or rights arising thereunder which contravene our public policy or violate our positive laws. *Reilly* v. *Pepe Co.,* 108 Conn. 436, 445, 143 A. 568.

The substantial question, therefore, is whether the

public policy of this state is so strongly established as to require that our courts shall not enforce the present claim. Repeated efforts to legalize pari-mutuel betting in this state have failed. However, the mere fact that we have no law similar to the Rhode Island statute would hardly warrant a holding that the present claim could not be enforced in our courts. This is so because it is our settled policy to keep our courts open for the enforcement of a proper foreign law unless a well-established public policy forbids. "Similarity of legislation has indeed this importance; its presence shows beyond question that the foreign statute does not offend the local policy. But its absence does not prove the contrary. It is not to be exalted into an indispensable condition." *Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 111, 120 N. E. 198 (*Cardozo, J.*) Courts "are generally loath to deny the enforcement of a proper foreign law, and will not, if they consider the domestic policy of minor importance." *Maisch* v. *Maisch*, 87 Conn. 377, 381, 87 A. 729; Minor, Conflict of Laws, p. 11.

We have in this state something more than negative evidence of our public policy. General Statutes, § 6316, makes betting on a horse race a crime. It provides as follows: "Any person who shall bet upon any horse race or shall be a stakeholder of anything staked upon any horse race shall be fined not more than fifty dollars." Section 4738 provides: "All wagers, and all contracts and securities whereof the whole or any part of the consideration shall be money or other valuable thing won, laid or betted, at any . . . horse race . . . shall be void. . . ." Section 6316 had its origin in a statute passed in 1778 which imposed a forfeiture for betting on horse races, one-half of which was to be paid to a common

informer if he made the complaint, but the whole was to go into the public treasury if the prosecution was by a public officer; 2 State Rec. 133; in 1803 the statute was revised, the provision for payment to an informer was omitted, and the statute took substantially its present form. Acts & Laws (1805 Ed.) p. 641. Section 4738 was first enacted in 1797. Acts & Laws (1805 Ed.) p. 472. "The law in question is purely a police regulation. . . . Betting on horse-races is a penal offense. . . . Since the establishment of our government wagering has been held to be, if not absolutely immoral, yet so injurious in its results as to require suppression by penal legislation." *State* v. *Harbourne,* 70 Conn. 484, 490, 40 A. 179.

Manifestly, our statutes express an ancient and deep-rooted public policy. It has been established and continued by the legislature, not by the courts. It follows that the judicial department of our government is being asked to enforce a claim which would be valid under the laws of another jurisdiction but which contravenes the ancient and deep-rooted public policy of this state. This it cannot do. *Reilly* v. *Pepe,* supra; Restatement, Conflict of Laws, § 612; 6 Williston, Contracts (Rev. Ed.) p. 5094.

We recognize that there is a conflict of authority on the question, and that modern authorities contend for a relaxation of the rule. Nevertheless, they support it in cases where it is based upon the deep-rooted public policy of a state. "The modern tendency is to enforce all contracts valid where made though invalid by the law of the forum unless they are not merely contrary to the public policy of the forum, but distinctly pernicious thereto, or, as Cardozo, J., expressed it in *Loucks* v. *Standard Oil Co.* [supra], un-

less they 'would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of commonweal.' " 6 Williston, op. cit., p. 5095, note. Goodrich states the rule that recovery will be denied if enforcement of the claim contravenes local public policy, and goes on to say: "But the better view is that it should take a strong case to bring such exception into operation where the contract is valid by the law governing it at the time it was entered into." Goodrich, Conflict of Laws (2d Ed.) p. 258. We follow this "better view"; see the citation from *Maisch* v. *Maisch,* supra; but are constrained to decide that the claim here presented, although valid under the law of another jurisdiction, contravenes the ancient and deep-rooted public policy of this state and therefore cannot be enforced in our courts.

There is no error.

In this opinion MALTBIE, C. J., BROWN and DICKENSON, Js., concurred.

JENNINGS, J. I dissent on the ground that conduct approved by so many sister states cannot be said to "violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." *Loucks* v. *Standard Oil Co.,* 224 N.Y. 99, 111, 120 N.E. 198. Unless it does, a contract based thereon and legal where made should be enforced here. Beach, Uniform Interstate Enforcement of Vested Rights, 27 Yale L.J. 656, 662. To paraphrase a note to Justice Beach's article (p. 664), in applying Rhode Island law the court does not allow it to operate in Connecticut but only recognizes the fact that it operates in Rhode Island.