## HILTON INTERNATIONAL COMPANY *v.* PASQUALE ARACE

### APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 455

Argued September 27—decided December 9, 1977

*Jon S. Berk,* for the appellant (defendant).

*Charles J. Donato,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. This is an action brought to enforce a judgment obtained in Puerto Rico for a gambling debt. The defendant, Pasquale Arace ("Arace"), is a resident of Connecticut. During March of 1971 he visited the gambling casinos of the plaintiff, Hilton International Co. ("Hilton"), in Puerto Rico where he sought and was given gambling credit in the amount of $3300, secured by delivering to Hilton two checks endorsed in blank

made payable to himself. The credit was used solely for gambling. Hilton was unable to satisfy the gambling debts accumulated by Arace because he issued a stop payment order on the checks. Thereafter, in the Superior Court in Puerto Rico Hilton brought an in personam action against Arace for the collection of the gambling debt. In that action Arace, through the secretary of state of the Commonwealth of Puerto Rico, was served with process in Connecticut by registered mail with return receipt requested, as provided by rule 4.7 of the Puerto Rico rules of civil procedure. On February 9, 1973, a default judgment was entered against Arace by the Superior Court in Puerto Rico in the sum of $4125 plus costs. On June 3, 1975, Hilton instituted an action against Arace in the Court of Common Pleas in Hartford county to collect the Puerto Rican judgment together with interest and costs on that judgment.

Essentially, two issues are raised by this appeal. The first is whether the exercise of personal jurisdiction over Arace, a Connecticut resident, pursuant to the long-arm statute of Puerto Rico was violative of due process. If it was not, then the second issue is whether Connecticut is obligated to give full faith and credit under that clause of the United States constitution to the Puerto Rican judgment, based as it is on a gambling debt, where a strong state policy exists against such a claim.

The due process claim clearly involves the consideration of the "long-arm" statute of Puerto Rico, i.e., rule 4.7 of the rules of civil procedure of Puerto Rico. The relevant portion of rule 4.7 here is § (a) (1) thereof which provides for personal jurisdiction over nonresidents "if the action or claim arises as a result of the following: (1) Such person or his agent carries out business transactions with Puerto Rico." Arace does not claim that the ser-

vice was inadequate or that notice was deficient, but rather he claims that the application of the Puerto Rican "long-arm" statute to give in personam jurisdiction over him in the circumstances of this case does not comport with federal constitutional due process requirements. Since *Pennoyer v. Neff*, 95 U.S. 714, the United States Supreme Court has held that the due process clause of the fourteenth amendment places some limits on the power of state courts to enter binding judgments against persons not served with process within their boundaries. Where the limits have been has generated controversy and the United States Supreme Court, in an evolving process, has accepted and abandoned "consent," "doing business," and "presence" for measuring the extent of state judicial power over foreign corporations. *McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 222. The trend over the years toward broadening a state's jurisdiction over nonresidents was greatly advanced by the landmark case of *International Shoe Co.* v. *Washington*, 326 U.S. 310, which laid down the "minimum contacts" test. That test requires that, to subject a defendant to a judgment in personam, the defendant have certain minimum contacts with the forum so that the maintenance of the action does not offend traditional notions of fair play and substantial justice. *International Shoe Co.* v. *Washington*, supra, 316. Even after *International Shoe*, although a single act was held in *McGee* v. *International Life Ins. Co.*, supra, to sustain state jurisdiction over a foreign corporation, the United States Supreme Court said pointedly in *Hanson* v. *Denckla*, 357 U.S. 235, 251, that it is a mistake to assume that this broadening trend "heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." *International Shoe*, however, with its "minimum contacts" test remains the bellwether case in this area of due process.

Rule 4.7 of the rules of civil procedure of Puerto Rico, like corresponding legislation in a number of states, follows the broadening trend of the law subjecting a nonresident to in personam jurisdiction as articulated by the United States Supreme Court and which resulted in *International Shoe Co.* v. *Washington,* supra.

The case of *San Juan Hotel Corporation* v. *Lefkowitz,* 277 F. Sup. 28, 29 (D. P.R.) presents circumstances strikingly similar to this case. That case arose out of the extension of credit in Puerto Rico to a New York resident by a Puerto Rican corporation. The credit extended there represented unpaid bills for lodging, food, liquor and credit extended to the defendant at the gambling casino in the plaintiff's hotel. That credit was held to constitute "business transactions" within the meaning of rule 4.7 (a) (1) of the rules of civil procedure of Puerto Rico, and that statute, as applied against the nonresident New York defendant, was held not to violate due process. *International Shoe* was heavily relied upon by the New York court in finding no violation of due process.

In *Pennoyer* v. *Neff,* supra, 727, the presence of the defendant within the territorial jurisdiction of the court was required for rendition of a judgment personally binding upon him. At the present time, however, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.* v. *Washington,* supra, 316. The federal court for the district of Puerto Rico, in a case where rule 4.7 of the rules of civil procedure of Puerto Rico was directly involved, relying on *International Shoe* and *McGee,*

and quoting with approval from the *San Juan Hotel Corporation* v. *Lefkowitz* case, *supra*, made the point that the issue is not whether the nonresident upon whom jurisdiction is asserted is "doing business" in the forum but whether that person has the minimum contact with the territory of the forum in the light of *International Shoe* and *McGee*. *Luce & Co., S. en C.* v. *Alimentos Borinquenos, S. A.*, 283 F. Sup. 81, 82 (D. P.R.).

There can be no substance to any claim that the defendant's activities in Puerto Rico which gave rise to this action failed to satisfy the "minimum contacts" test of *International Shoe* necessary to make rule 4.7 operative as to him. He went to Puerto Rico and he admittedly went there as one of a large group of people on a gambling junket. He visited the Hilton gambling casino. He asked Hilton for and received gambling credit in the amount of $3300. In that context he gave Hilton two checks endorsed in blank payable to himself. The checks appeared to be dated about two weeks apart, one on March 5, 1971, and the other on March 20, 1971. The entire credit extended by Hilton on those checks was utilized by the defendant for gambling in Puerto Rico. As was concluded in *Executive Air Services, Inc.* v. *Beech Aircraft Corporation*, 254 F. Sup. 415 (D. P.R.), and in *San Juan Hotel Corporation* v. *Lefkowitz*, *supra*, both cases dealing with rule 4.7, the contacts of Arace with Puerto Rico were more than sufficient to satisfy the requirements of due process under *International Shoe* and its progeny. In his due process claim Arace asserts that his involvement in a trial in Puerto Rico away from his home in Connecticut contributes, under the circumstances, to the derogation of his federal due process rights. This he does on a theory akin to the doctrine of forum non conveniens. It is true that an "estimate

of the inconveniences" which would result to him from a trial away from his home is relevant on his due process claim. *International Shoe Co.* v. *Washington,* supra, 317. Of course, Arace makes no claim that he had inadequate notice of the Puerto Rican suit or that he had insufficient time to prepare his defense or that he could not appear. The fact that the defendants in *International Shoe* and *McGee* were corporations and that here the defendant Arace is a natural person is a distinction without a difference. *San Juan Hotel Corporation* v. *Lefkowitz,* supra, 30. It can fairly be assumed that there is some inconvenience to Arace but it certainly is not something which avails him on his due process claim under the circumstances of this case. There was a valid federal constitutional predicate for the entry of the Puerto Rican judgment consistent with due process.

The court turns now to Arace's claim that the full faith and credit clause of the United States constitution does not require that Connecticut recognize a Puerto Rican judgment based on a gambling debt because of Connecticut's strong state policy against such claims. Article IV, § 1, of the United States constitution provides: "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." It has been said that "[m]anifestly, our statutes express an ancient and deep-rooted public policy" against gambling. *Ciampittiello* v. *Campitello,* 134 Conn. 51, 56. In *Ciampittiello* the court goes on to point out that this policy "has been established and continued by the legislature." In recent years the legislature has enacted legislation in this area that has attenuated this

"ancient and deep-rooted public policy." The erosion of this policy began in 1971 when the Connecticut General Assembly established the commission on special revenue to administer and oversee the powers given it. See General Statutes §§ 12-557 et seq. Within the commission on special revenue the statute provides for a state lottery division, a state racing division and a state off-track betting division. General Statutes § 12-567. Our statute then provides for the operation of a lottery; § 12-568; the establishment and conduct of off-track betting on races held within or without the state of Connecticut; General Statutes §§ 12-571 et seq.; and pari-mutuel betting at racing events. General Statutes § 12-572. In 1972, the legislature provided authority to the commission on special revenue for the operation of frontons for the exhibition of jai alai and pelota. General Statutes § 12-573a. In 1975 the legislature provided for an instant lottery. General Statutes § 12-568 (b). In 1976 a statute was passed that authorized a daily lottery. General Statutes § 12-568 (d). This brief recital serves to demonstrate a formidable trend by the legislature away from the "ancient and deep-rooted public policy" against gambling in this state. This trend is one in which Connecticut is neither alone nor the first when viewed on a nationwide basis. Despite these recent legislative enactments in Connecticut, this court is of the view that there is still a strong policy against gambling, except where it is authorized specifically by our statutes. General Statutes § 52-553 expressly prohibits the recovery of money knowingly lent to a person for the purpose of gambling and this provision would have barred the plaintiff from obtaining a judgment in this state upon the subject matter of its claim. See *King International Corporation* v. *Voloshin,* 33 Conn. Sup. 166. This circumstance does not avail the defendant, however, because the issue

before the court is whether full faith and credit must be given to a valid judgment of another jurisdiction. That question is not presented in either *Ciampittiello* v. *Campitello*, supra, or *Hilton of San Juan, Inc.* v. *Lateano*, 6 Conn. Cir. Ct. 680. It must be remembered that a cause of action on a judgment is different from that upon which the judgment was rendered. *Milwaukee County* v. *M. E. White Co.*, 296 U.S. 268, 275. No claim has been made in the record or in argument before us concerning the status of Puerto Rico insofar as concerns valid judgments of the courts of Puerto Rico being required to be extended full faith and credit by any state of the United States pursuant to article IV, § 1, of the United States constitution.[1] There is no doubt, however, that the judgment of the Superior Court of Puerto Rico is entitled to full faith and credit in Connecticut. *Americana of Puerto Rico, Inc.* v. *Kaplus*, 368 F.2d 431 (3d Cir.), cert. denied, 386 U.S. 943. In the case of *El San Juan Hotel Corporation* v. *Koenig*, 66 Misc. 2d 715 (N.Y.), a default judgment was obtained in Puerto Rico against a New York resident where jurisdiction was based upon rule 4.7 (a) (1) of the Puerto Rico rules of civil procedure. The court there held that the judgment of the Superior Court of Puerto Rico was entitled to full faith and credit, citing *Americana of Puerto Rico, Inc.* v. *Kaplus*, supra. The Supreme Court of Florida in *Heritage Corporation of South Florida* v. *Rivas*, 300 So. 2d 901, denied certiorari to the Florida District Court of Appeal case of *Heritage Corporation of South Florida* v. *Rivas*, 289 So. 2d 432, which held (p. 434) that "[t]he full faith and credit clause is applicable to the territorial courts of Puerto Rico like any other state."

---

[1] For an excellent discussion of the evolution of the governmental status of Puerto Rico since Spain ceded it to the United States in 1898, see *Americana of Puerto Rico, Inc.* v. *Kaplus*, 368 F.2d 431 (3d Cir.), cert. denied, 386 U.S. 943.

The case of *Fauntleroy* v. *Lum*, 210 U.S. 230, is dispositive of the issue of full faith and credit even in the face of a strong public policy against enforcing particular claims which have been reduced to judgment elsewhere. In *Fauntleroy* v. *Lum* it was held that the full faith and credit clause of the United States constitution required Mississippi to extend full faith and credit to a judgment obtained in Missouri upon a gambling debt even though that debt was incurred in Mississippi and such a debt was not a valid legally enforceable obligation under Mississippi law. The Restatement (Second), Conflict of Laws § 117, captioned "Original Claim Contrary to Public Policy of State Where Enforcement of Judgment is Sought," states the law to be that "[a] valid judgment rendered in one State of the United States will be recognized and enforced in a sister State even though the strong public policy of the latter State would have precluded recovery in its courts on the original claim." The comment under that section cites the authority of *Fauntleroy* v. *Lum*. Restatement (Second), Conflict of Laws § 117, comment b. This court, no matter what its feelings may be on the subject of gambling, is required to obey the command of the full faith and credit clause of the federal constitution. The public policy of Connecticut cannot prevail against the command of the federal constitution. The trial court correctly held that the judgment of the Superior Court of Puerto Rico was required to be accorded the full faith and credit demanded by the federal constitution.

There is no error.

In this opinion PARSKEY and D. SHEA, Js., concurred.