[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brings this action in four accounts, claiming: 1) that the transfer to the defendant of the plaintiff's interest in certain real estate was accomplished by means of duress; 2) that said transfer was CT Page 7065 accomplished by means of fraud; 3) that the defendant has been unjustly enriched by the defendant; 4) the defendant has been unjustly enriched by the plaintiff.
The defendant denies all of the allegations, except to admit that the plaintiff and the defendant were married in 1974 and divorced in 1982.
The defendant alleges, "by way of set-off and/or counterclaim" as revised April 10, 1992, that there are past due arrearages of child support from the Puerto Rico divorce in the amount of $4,020.00 accruing from July 22, 1982 to May 31, 1985, and also that the plaintiff has failed to pay a judgment awarded to her by a court in Puerto Rico, in a separate action, on April 2, 1983 in the amount of $2,057.00. The revised answer setting up the claim of the 1983 Puerto Rico judgment was filed on April 10, 1992, revising the counterclaim filed May 30, 1991.
The May 30, 1991 counterclaim and the April 10, 1992 revised counterclaim also alleges assaults and battery on diverse occasions, causing pain, suffering and mental anguish and medical and hospital expenses. The revised set-off/counterclaim alleges specific dates of assaults, battery and threats, twelve in number, from October 1974 to November 21, 1990.
The plaintiff's claim, in essence, is that subsequent to the 1982 divorce in Puerto Rico the defendant returned to Connecticut with their two children, on May 16, 1985. He and the defendant purchased a house known and located at 75 Woodbridge Avenue, East Hartford, Connecticut on April 15, 1988. He claims that he furnished all of the funds for the deposit and for the additional funds required at the closing, in the total amount of $23,266.24. The balance of the purchase price was financed by a first mortgage in the amount of $87,000.00.
Title was taken in both names Eligio P. Velez and Elisa Gonzalez, in survivorship, on April 15, 1988. The deed was recorded in the East Hartford land records on April 19, 1988, Vol. 1134, P0194, at 1:21 P.M. The plaintiff executed a quitclaim deed to the defendant. It bears no date, but was also recorded in the East Hartford land records on April 19, 1988, Vol. 1134, P0196 at 1:21 CT Page 7066 P.M., immediately succeeding the warranty deed.
This property was thereafter sold by the defendant to A. Bojuszewska and J. Stypulkowski on August 8, 1989, at a substantial profit. On that date, August 8, 1989, a property was purchased from one Peter Pitelis, known as 1073 Tolland Street, East Hartford. Title was taken in the name of the defendant Elisa Gonzalez and the plaintiff, Eligio Velez. On September 11, 1989, four and a half weeks after the closing, the plaintiff Eligio Velez quitclaimed his interest in the Tolland Street property to the defendant Elisa Gonzalez.
The evidence reveals that the plaintiff was removed from residence at the Tolland Street property on November 27, 1990 by virtue of a family violence protective order issued by the Superior Court, Geographical Area 12, Judge Mullarkey, directing the plaintiff to vacate the property by midnight November 28, 1990. The Order mandated "absolutely no contact of any kind with the victim", the defendant Elisa Gonzalez. The order precluded the plaintiff from entering the property "except to pick up the children for visitation on prior notice."
The plaintiff commenced this action by complaint of March 20, 1991 seeking transfer of the Tolland Street property to himself; money damages: restitution of sums paid towards the purchase of the property.
The Court finds the following additional facts. The plaintiff did not furnish from his funds all of the $23,503.24 needed for the original purchase of the 75 Woodbridge Avenue, East Hartford property. (10,000.00 deposit; $350.00 appraisal-credit-lenders fee; $337.00 insurance; $12,816.24 balance. (Plaintiff's Exhibit B, closing statement).
The defendant furnished a check in the amount of $1,580.00 as part of the down payment by virtue of the withdrawal from her savings account at People's Bank. (Defendant's Exhibits 20, 21) The defendant furnished an additional $3,900.00 from that account by virtue of her withdrawal from that account on April 1, 1988. (Defendant's Exhibit 21) CT Page 7067
There was a dispute as to this item. The plaintiff claims that these funds, which he claims were $3,000.00, were furnished to him as a gift from the defendant so that he could pay an arrearage owed on his personal income tax. The Court does not credit the contention of the plaintiff that the funds were furnished to him as a gift. The Court credits the defendant's testimony that the amount, $3,900.00, which she furnished, was for the purchase of the house. Even if the plaintiff unilaterally used these funds to pay his personal income tax, thereby preserving his own cash of $9,000.00 for the additional deposit which he claims to have made for the house, this, of course, would not alter the Court's conclusion.
Additionally the defendant contributed $6,816.00 at the closing. See People's Bank check in that amount, dated April 15, 1988, (defendant's exhibit 4). These sums were derived from the cash remaining from the proceeds of the sale of her house in Puerto Rico. The plaintiff claims that he provided the cash for that check. It should be obvious that if the plaintiff had that amount of additional cash he would not have to have appropriated the defendant's $3,900.00, fifteen days earlier, to pay his personal income tax.
Summarizing, the defendant contributed $12,296.00 to the purchase of the house, $1,580.00, $3,900.00, $6,816.00. The funds necessary to purchase the house were $23,503.24 (see closing statement, plaintiff's exhibit B). The plaintiff contributed the balance, $11,207.24. Part of the plaintiff's contribution was derived from a loan made to him by his brother-in-law, from whom the house was purchased. The balance of the purchase price, $87,000.00, was by virtue of a bank mortgage.
A year and a half later, August 8, 1989, the defendant, at the urging of the plaintiff, sold the Woodbridge Avenue property and simultaneous therewith purchased a house at 1073 Tolland Street, East Hartford. That sale of the Woodland Avenue property produced a profit, allowing for the purchase of a more appropriate house to enable the mother to raise the children in a more safe environment.
Again title was taken in both names there being a CT Page 7068 substantial mortgage commitment of $88,000.00. The transactions, sale and purchase, generated net distributable funds of $11,427.23. The funds were distributed in three checks. One payable to the defendant for $3,000.00, one payable to plaintiff and defendant of $7,987.23, and a claimed refund check of $440.00 from the seller to buyer's attorney, Jorge Simone.
The Court is unable to conclude on the basis of the evidence whether both parties, or only the plaintiff, received and utilized the $440.00 refund check. As to the $3,000.00 check this sum went exclusively to the defendant Gonzalez, to repay $2,000.00 borrowed from a relative and $1,000.00 of her funds for the $3,000.00 Tolland Street deposit. As to the $7,987.23 check, payable to both, the court concludes that these funds were turned over to the plaintiff. The plaintiff had complained that his original funds advanced for the Woodbridge Avenue property had not been returned to him. From this sum he used $1,000.00 to buy a family living room set, and paid certain sums towards repayment of the loan from his brother-in-law. The Court does not credit the plaintiff's contention that he used the balance for general family purposes, above and beyond his expected normal contribution toward his regular occupancy.
In essence, from the plaintiff's original funds (including borrowed funds from his brother-in-law) of $11,207.24, as aforesaid, the Court concludes that $6,987.23 was refunded to him, leaving a balance of $4,220.01 unreimbursed to him.
The Court also finds that on September 11, 1989, a month after the closing, the plaintiff went to the attorney, by himself, and had the attorney prepare, and he executed, a quitclaim deed of his interest in the Tolland Street property to the defendant, which he caused to be filed in the land records. This was not at the urging of, or even with the knowledge of the defendant. The plaintiff presented the defendant with the deed when it was returned to him by the town clerk.
The plaintiff claims fraud on the part of the defendant, claiming that the defendant induced the plaintiff to transfer the property to her. He claims that it was done by virtue of, because of, a promise of the CT Page 7069 defendant to continue to reside with him. The Court does not credit that contention which is set forth in the second count of the complaint. There was no such representation made. Helman v. Kashak, 122 Conn. 641. The Court finds for the defendant on the second count.
The plaintiff claims in the first count that the transfer was accomplished by means of duress. The evidence however demonstrates that the plaintiff suggested in the first instance that the Woodbridge Avenue house be purchased so that the defendant and the children could have a home and the stability which a permanent home provides. It was he who suggested that the subsequent Tolland Street property be purchased. That property provided a better environment to raise the children. Any expression by the defendant of a desire to leave with the children would have been due solely to the emotionally abusive behavior to which she was being subjected by the plaintiff, and had nothing to do with and was not conditioned the upon matter of title to the house. Any indication of such desire to leave was not in any fashion conditional upon or referenced in connection with the title to the house.
The plaintiff's unilateral determination to transfer the Tolland Street title to the house may have been motivated by a desire to ingratiate himself with the defendant; to demonstrate an ostensible good will in the face of his tumultuous and unjustified emotionally abusive outward behavior directed towards the defendant. What it did accomplish was to place the status of the title in the same state as was the Woodbridge Avenue property, where title was in the defendant exclusively on the day of that purchase acquisition, which is exactly what the plaintiff intended in the first instance.
Although the plaintiff may have had an unjustified expectation of residing permanently with the defendant and the children, there was no agreement to that effect. The defendant said nothing to induce the plaintiff to conclude that there would be such permanency without regard to the plaintiff's future behavior. His departure from the house was due to his own pattern of misconduct, as affirmed by the testimony of the teen-age children at the trial, and as determined by the Superior Court protective order. The first count of the complaint is without merit. The Court CT Page 7070 finds for the defendant on the first count of the complaint.
The fact that the plaintiff contributed his funds to purchase some of the furniture, much of which he took with him when he left the house as directed by the protective order, does not advance the defendant's contention that he has an equitable interest in the real estate. If he was to reside there, it was to be expected that he would contribute to the furnishings for his own comfort and convenience. As to any contribution to the monthly charges, mortgage, utilities and the like, it would be expected that any adult in occupancy would contribute to the monthly occupancy expenses of the household. Contributing to occupancy expenses, the same as rent or use and occupancy charges, does not confer title, legal or equitable, in anyone. The plaintiff does not claim that he paid any occupancy charges, for mortgage payments or otherwise, subsequent to his vacating the Tolland Street house. This was not a partnership or a joint venture as concerns ownership of the properties.
In essence, the plaintiff's sole claim, which he can demonstrate as aforesaid, is that he advanced sums for the initial down payment and is entitled to reimbursement therefore. The Court credits that contention to the same extent as if he had loaned the sums to the defendant to accomplish the down payment. The plaintiff's unreimbursed portion of the down payment is $4,220.01.
The plaintiff cites the case of Boland v. Catalano,202 Conn. 333 to advance his contention that the plaintiff is entitled to one-half of the equity in the house. The case is inappropriate. In Boland, supra, there was an agreement, express or implied, that the parties would share their earnings and property accumulations during this relationship, the title to the property being in the name of one only, at the suggestion of the title holder, for the convenience of both. In the instant case not only was it the opposite party who deemed that the property be in the name of the title holder, as a home for the children and their mother, but he further insisted that at the time of the sale of Woodridge Avenue, that the funds which he advanced towards the Woodbridge Avenue purchase be largely repaid, which did in fact occur. He never did, never CT Page 7071 wanted to be, and never was a partner or joint venturer with the defendant in the purchase of and appreciation of real estate.
Nonetheless, the Court determines that the defendant was benefited by the funds received from the plaintiff, $11,207.24, much of which has already been reimbursed to the plaintiff. See Monarch Accounting Supplies, Inc. v.Prezioso, 170 Conn. 659 (1976). The fact of enrichment occurs at the time of the enrichment and does not implicate the fact that the property purchased, the then equity, may have appreciated in value at a subsequent time. What the defendant received, unreimbursed, is $4,220.01. See Burnsv. Koellmer, 11 Conn. App. 375, 384 (1987).
The Court finds for the plaintiff, on the fourth count of the complaint, that the defendant has been "unjustly enriched" by the plaintiff in the amount of $4,220.01. The third count of the complaint claiming that "thedefendant has been unjustly enriched by the defendant" is incomprehensible, and the Court finds for the defendant on that count.
The Court denies the claim for relief seeking transfer of the premises to the plaintiff, or money damages, except as to restitution of the aforesaid unreimbursed sum of $4,220.01.
The Counterclaim/Set-off
The defendant pleads two claims "by way of set-off and/or Counterclaim."
First, and twofold, the defendant claims that the plaintiff is in arrears as to child support in the amount of $4,020.00 from July 22, 1982, the date of the Puerto Rico divorce; and second, that the plaintiff is indebted to the defendant in the amount of $2,057.00 by virtue of a judgment dated April 2, 1983 from the court in Puerto Rico.
Second, the defendant claims that the plaintiff has physically assaulted the defendant and threatened the defendant on numerous occasions, from October 1974 through November 21, 1990. CT Page 7072
The Court treats all of these claims as set-offs rather than as counterclaims. None of these claims have anything to do with the purchase of real estate. They are not arising out of the same transaction, or one of the transactions, to wit the two real estate transactions, and hence they are properly pleaded as set-offs. (Practice Book 116; 168).
First, as to the Puerto Rico judgment from the Superior Court Tribunal of Puerto Rico, Court of Congress, Civil Case No. CA-82-1086, dated April 2, 1983, caption Eligio Perez Velez, Plaintiff, vs Elisa Gonzalez Santiago, Defendant. The judgment asserts, on its face, that both parties were represented by counsel (see 24A, 24B). The action was brought by the plaintiff. The defendant counterclaimed. The defendant, by stipulation, was awarded judgment in the amount of $2,057.00, the amount of one-half of the value of the furniture which the plaintiff had taken possession of.
The judgment is entitled to enforcement in this Court under the Full Faith and Credit clause of Article IV, § 1
of the United States Constitution (Hilton International Co.v. Arace, 35 Conn. Sup. 522, 529 (1977) or enforceable under the principles of Comity (Adamsen v. Adamsen,151 Conn. 172, 176 (1963). The plaintiff claims that his attorney in Puerto Rico commenced the action on his own, without the knowledge or consent of the plaintiff. The Court does not credit that contention. The plaintiff's attempt to attack the jurisdiction of the Court in Puerto Rico, on the judgment in favor of the there counterclaiming defendant, this present defendant, is entirely without merit. The Court finds this set-off proven in the amount of $2,057.00.
As to the various alleged assaults of the plaintiff upon the defendant, and the threats, dating back to 1974. This counterclaim/set-off was first asserted by the pleading dated May 31, 1991.
The Court credits the evidence that the plaintiff assaulted the defendant on two occasions. One occurred on September 14, 1990, at which time the plaintiff grabbed the defendant by the hair, slapped her, struck her on the left arm, struck her in the back, thigh, and head, and held a CT Page 7073 machete to her head.
The other incident took place on September 29, 1990 at which time the plaintiff struck the defendant in the face and left upper arm, forcing her to the ground and grabbed her by the hair, causing black and blue marks to the upper parts of the left arm from the shoulder to the elbow.
As to each of these assaults, which resulted in pain and suffering, both physical and emotional, the Court assesses damages in the amount of $550.00 as to each assault, being a total assessment of damages of $1,100.00 arising out of the assaults. The Court does not find that the defendant has proven any of the other alleged assaults, or damages resulting therefrom, by a preponderance of the evidence. Further, as asserted by the plaintiff at trial, these claims of February 21, 1988 and prior thereto, which seek affirmative damages, would be barred by the three-year statute of limitations, General Statutes § 52-577. See Mulville v. Brown, 9 Conn. Sup. 387, 390.
As to arrearages claimed for child support, the Court notes that the procedures required under General Statutes § 46b-2 have not been complied with. This does not however implicate jurisdiction. The evidence is inconclusive as to the existence of arrearages for the claimed time period. The Court finds for the plaintiff on the defendant's claim for such support arrearage.
As to the claim of the defendant for conversion of certain furniture and appliances by the plaintiff upon the plaintiff having vacated the property, the defendant has not proven the identity of the goods or the source of title or the right to possession thereof. Hence the Court finds for the plaintiff on this claim.
In summary the Court finds for the plaintiff on the fourth count, unjust enrichment, in the amount of $4,220.01. The Court finds for the defendant on the claims for set-off in the amount of $2,057.00 in enforcing the Puerto Rico judgment, and for the defendant in the total amount of $1,100.00 on the causes of action for assault and battery.
Accordingly, the Court enters judgment for the CT Page 7074 plaintiff in the net amount of $1,063.01.
A Small Claims Court action was commenced by Eligio Velez against Elisa Gonzalez on March 23, 1992, and transferred to the docket for consolidation with this case. The plaintiff claims conversion of personal property by the defendant from the marital residence at 1075 Tolland Street, East Hartford, in the claimed amount of $2,076.00 which is similar to the defendant's claim of set-off, determined heretofore in this decision. The plaintiff has not proven the identity of the goods or the source of the title or the right to possession thereof. The Court finds the claim to be not proven and enters judgment for the defendant as to the Small Claims case.
L. Paul Sullivan, J.