[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CHOICE OF LAW
In this action Interface Flooring Systems, Inc. ("Interface") seeks to recover legal fees and expenses it incurred in defending a copyright infringement claim from Aetna Casualty Surety Co., and its related companies, The Standard Fire Insurance Company and the Automobile Insurance Company of Hartford (collectively CT Page 3508 referred to as "Aetna"), its insurer. Interface and Aetna disagree as to whether the law of the state of Georgia or the state of Connecticut should apply. Since a determination that Georgia's law applies could end the litigation without the need for any trial, the parties have requested the court to make that determination prior to trial.
For the reasons set forth below this court finds that the law of Georgia should be applied in this case, under either a lexlocus contractus standard, or under the Restatement (Second) of Conflicts of Laws. Contrary to the argument of Interface, this court does not find that the law of Georgia, which bars recovery by an insured who gives late notice of a claim to his insurer, violates the public policy of this state such that Georgia law should not be applied under the rule of Ciampittiello v.Campitello, 134 Conn. 51, 54 A.2d 669 (1947).
Interface, a manufacturer and seller of carpet tiles for commercial use, is a Georgia corporation with its principal place of business in Georgia. Interface conducts business worldwide. Aetna issued various insurance policies to Interface, which policies were in effect at all times relevant to this action.
On March 1, 1990, Milliken Company ("Milliken"), a competitor of Interface, sued Interface in the federal district court for the Southern District of New York alleging that Interface infringed on copyrighted Milliken carpet tile designs by advertising and selling them throughout the United States. Interface did not notify Aetna of the lawsuit at the time it was served and never tendered the defense of the suit to Aetna. Instead, Interface retained the Atlanta, Georgia law firm of Kilpatrick Cody to represent it in the matter. Kilpatrick 
Cody then brought suit against Milliken for patent infringement in federal court in Georgia. Both suits were settled on September 25, 1990. The settlement agreement did not require either party to pay the other any money. However, each party was required to bear its own legal costs.
On March 6, 1991 Interface gave formal notice of the Milliken suit to Aetna by a document sent to its insurance broker, J. Smith Lanier and Company ("Lanier"). On November 18, 1991 Aetna denied coverage for several reasons, including "late notice."
In applying Connecticut's choice of law rules in contract cases, Connecticut courts have traditionally adhered to the place CT Page 3509 of contract or the lex loci contractus. Whitfield v. EmpireMutual Ins. Co., 167 Conn. 499, 356 A.2d 139 (1967); Breen v.Aetna Casualty Surety Co., 153 Conn. 633, 220 A.2d 254 (1966);Jenkins v. Indemnity Insurance Co., 152 Conn. 249, 295 A.2d 780
(1964); Graham v. Wilkins, 145 Conn. 34, 138 A.2d 705 (1958);Clinton v. Aetna Life Surety Co., 41 Conn. Sup. 560,594 A.2d 1046 (1991).
Under the lex loci contractus doctrine, to determine which law applies to the interpretation of a contract, Connecticut looks to the law of the place of the contract. However, if the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, Connecticut's rule is that the law of the place of operative effect or performance governs its validity and construction.Whitfield, supra, 167 Conn. at 506.
The following facts are pertinent to a determination of the place of the insurance contracts in question and the place of the operative effect of those contracts. In procuring insurance coverage for its worldwide operations, Interface utilized the services of its insurance broker, Lanier, of West Point, Georgia. Lanier prepared a proposal for coverage with Aetna which Lanier presented to Interface in Georgia. Lanier's proposal included premium pricing prepared by Aetna Atlanta. Underwriters from Aetna Atlanta rated, or underwrote, the risk presented by Lauier and decided whether the risk should be undertaken. The rates quoted for most of the insurance coverages involved, including the coverage under which Interface seeks to recover here, were rates which had been approved by the appropriate Georgia insurance regulatory agency.
When Interface accepted the proposal from Aetna, it informed Lanier, which issued a binder to Interface in Georgia. Lanier also notified Aetna Atlanta that it had bound coverage. Upon notification that coverage had been bound, Aetna Atlanta issued the policy which included certain endorsements required by Georgia law. The policy did not contain any endorsements which were used because they were required by Connecticut law.
After compiling the appropriate forms in Georgia, Aetna Atlanta forwarded the policy to Lanier in Georgia. Lanier countersigned the policy in Georgia and delivered it to Interface in Georgia. Georgia law required the countersignature of an agent licensed to do business in Georgia before the policy became CT Page 3510 effective. Interface paid its premiums to Lanier in Georgia and Lanier paid Interface's premium to Aetna Atlanta in Georgia. After the first policy year, Interface requested renewal policies from Aetna Atlanta in Georgia, through Lanier.
Aetna's home office is located in Connecticut. However, the involvement of the home office was minimal and limited predominantly to issues of reinsurance and umbrella coverage, neither of which are involved in the present case.
The home office of Interface and its primary facility for design, manufacture and distribution of carpet tiles are located in Georgia. The carpet tiles at issue in the Milliken litigation were designed, and manufactured in and supplied by the Georgia facility of Interface.
In Jenkins v. Indemnity Insurance Co., 152 Conn. 249,295 A.2d 780 (1964), the Supreme Court addressed the question of whether to apply Pennsylvania, Connecticut or New York law to a motor vehicle insurance policy issued by a Pennsylvania insurance company to two insureds who resided in New York and owned a car which was garaged in New York. The insureds, husband and wife, were involved in a single car accident in Connecticut and the wife commenced an action in Connecticut against her husband to recover for her personal injuries. The plaintiff wanted the court to apply Connecticut law, rather than the law of New York, because under New York law, an insurance policy did not provide coverage for interspousal lawsuits. The plaintiff urged the court to apply Connecticut law because the accident occurred in Connecticut. In an attempt to invoke the "operative effect" exception to the lex loci contractus rule, she argued that the insurance policy was intended to have its operative effect or place of performance in whatever state an accident should occur. The court disagreed and stated:
 In the instant case, therefore, the law of New York will apply unless the contract was to have its operative effect elsewhere. The plaintiff's claim is that since the policy was to apply "within the United States of America, its territories or possessions, or Canada", its place of operative effect is wherever, within those territorial limits, an accident occurs. This claim hardly seems consistent with the purpose of the parties in entering into the CT Page 3511 contract. Presumably, that purpose was to fix in advance their rights and liabilities in the event of an accident, at least so far as the construction and interpretation of the contract are concerned, rather than to leave them dependent upon the fortuitous circumstance of the place of the accident. Indeed, the assumption underlying our applicable conflicts rule is that when parties enter into a contract they do so with the law of a specific jurisdiction in mind. Chillingworth v. Eastern Tinware Co., supra. There is nothing in the instant case to suggest that this assumption is unfounded with respect to this insurance contract. On the contrary, in the declarations portion of the policy, the plaintiff stated that his residence was in Bronxville, New York, and that his automobile would be principally garaged there. This declaration gives no hint that the parties thought of this contract as other than a New York transaction. In the absence of a showing that the place of the operative effect of this contract was not New York under our rule the validity and construction of the contract were governed by the law of New York where the contract was made.
152 Conn. at 254. (Emphasis added.)
In this case the insured's principal place of business is in Georgia. The insurance policies were entered into in Georgia. The products at issue in the lawsuit underlying the coverage question involved in this case were manufactured in Georgia. Interface's argument that the place of operative effect of the policy is not Georgia, but any one of the many worldwide locations in which Interface does business, is no more persuasive than the plaintiff's argument in Jenkins that the operative effect of the insurance policy was any state where an accident occurred. Such argument ignores the principle enunciated in Jenkins that the purpose of parties to an insurance contract is "to fix in advance their rights and liabilities in the event of an accident", rather than to leave them dependent upon fortuitous circumstances, such as a place where one of Interface's products may cause injury or where one of its product sellers may be located.
In this case where the insurance contract was entered into in Georgia, with a Georgia corporation, whose main office and CT Page 3512 significant operations are in Georgia, it appears that both the place of the contract and the place of the operative effect of the contract are in Georgia. Therefore, Georgia law should apply.
Interface urges this court to reject the lex loci contractus
doctrine in this case and, instead, apply the rule of the Restatement (Second) of Conflicts of Law, Sec. 188. However, even under the Restatement, Georgia, and not Connecticut, law would apply. Our Supreme Court has recognized, but not yet applied, the choice of law rule set forth in the Restatement. Cassanova Clubv. Bisharat, 189 Conn. 591, 458 A.2d 1 (1983). Several Superior Courts have used the "most significant relationship" test of the Restatement to determine applicable law. U.S.F. G v. Katrick,
1992 WL 83554 (McGrath, J., 1992); Carrier Corp. v. Home InsuranceCo., 43 Conn. Sup. 182 (1994) (Using the "most significant relationship" test in determining choice of law in an environmental coverage case); Reichhold Chemical Inc. v. HartfordAccident Indemnity Co., CV 88-035192 (Freed, J.)
In Reichhold, supra, the court determined that Section 188 of the Restatement should be used in determining a choice of law question in an insurance coverage matter involving policies insuring multi-state risks. Under the Restatement, the contacts to be considered in determining the choice of law issue are:
1. the place of contracting;
2. the place of negotiation of the contract;
3. the place of performance;
4. the location of the subject matter of the contract; and
 5. the domicil, residence, nationality, place of incorporation and place of business of the parties.
The court in Reichhold rejected the insured's argument that it apply the law of the state where the loss site was located because issues concerning coverage under an insurance policy "have little to do with the location of the risk." (quotingBoardman v. United States Auto Ass'n, 470 So.2d 1024, 1033-34
(Miss. 1985)). Judge Freed looked at the following factors in determining that New York law applied to several Aetna policies issued to Reichhold Chemical: Reichhold's principal place of business was New York; the policies were issued through Aetna's CT Page 3513 office in New York; all proposals, endorsements, and changes to the policies were made at Aetna's office in New York; and premiums were paid to Aetna in New York through the office of Reichhold's New York broker. The same factors are found in this case except the jurisdiction is Georgia, rather than New York.
Under the Restatement approach, the law of Georgia, and not the law of Connecticut, would apply in this case because every significant act in procuring and performing the policy occurred in Georgia. No significant acts occurred in Connecticut.
The plaintiff argues that Connecticut courts should not apply the law of Georgia in this case because it violates the public policy of this state. It is true that Connecticut will not enforce the law of another jurisdiction if such law contravenes an "ancient or deep rooted" public policy of this state.Ciampittiello v. Campitello, 134 Conn. 51, 56, 54 A.2d 669
(1947); Casanova Club v. Bisharat, 189 Conn. 591, 458 A.2d 1
(1983). However, the plaintiff's reliance on Ciampittiello andCasanova Club is misplaced.
The "public policy" to which the plaintiff refers is that established under the holding of Aetna Casualty Surety Co. v.Murphy, 206 Conn. 409, 538 A.2d 219 (1988), that late notice of a claim by an insured to an insurance carrier may be excused if the insured can establish that the carrier was not prejudiced by the lack of notice. Under the law of Georgia, late notice bars the claim of the insured. The rule of Murphy is neither ancient nor deep-rooted. While it may constitute a public policy of this state in the sense that all statutes and common law do, it certainly is not the type of public policy referred to inCiampittiello.
 Ciampittiello was an appeal to the Superior Court from Probate Court commissioners who had allowed the claim of the defendant against the estate of his brother. The claim was based on the allegation that certain funds in the possession of the decedent at the time of his death represented profits from a fund which the defendant and the decedent had started for the purpose of wagering in the parimutuel machines at the racetrack in Rhode Island. At the time of the appeal the state of Rhode Island allowed gambling, but Connecticut did not.
The administrator demurred to the statement of claim on the ground that the law of Rhode Island could not be enforced in CT Page 3514 Connecticut because it contravened the public policy of this state and violated its positive laws. The trial court sustained the demurrer, and the Connecticut Supreme Court affirmed the trial court's decision. In Ciampittiello the Court made it clear that a mere difference between the law of Connecticut and that of another state was an insufficient ground for the refusal to enforce the other state's law:
 However, the mere fact that we have no law similar to the Rhode Island statute would hardly warrant a holding that the present claim could not be enforced in our courts.
This is so because it is our settled policy to keep our courts open for the enforcement of a proper foreign law unless a well-established public policy forbids. "Similarity of legislation has indeed this importance; its presence shows beyond question that the foreign statute does not offend the local policy. But its absence does not prove the contrary. It is not to be exalted into an indispensable condition." Loucks v. Standard Oil Co., 224 N.Y. 99, 111, 120 N.E. 198 (Cardozo, J.). Courts "are generally loath to deny the enforcement of a proper foreign law, and will not, if they consider the domestic policy of minor importance." Maisch v. Maisch, 87 Conn. 377, 381, 87 A. 729; Minor, Conflict of Laws, p. 11.
134 Conn. at 55. (Emphasis added).
The Court in Ciampittiello refused to apply Rhode Island law concerning gambling because Connecticut had always viewed gambling as immoral and "so injurious in its results as to require suppression by penal legislation:"
 Manifestly, our statutes express an ancient and deep-rooted public policy. It has been established and continued by the legislature, not by the courts. It follows that the judicial department of our government is being asked to enforce a claim which would be valid under the laws of another jurisdiction but which contravenes the ancient and deep-rooted public policy of this state. This it cannot do. ReillyCT Page 3515 v. Pepe, supra; Restatement, Conflict of Laws, 612; 6 Williston, Contracts (Rev. Ed.) p. 5094.
134 Conn. at 56.
In Jenkins v. Indemnity Ins. Co., 152 Conn. 249, 255,205 A.2d 780 (1964), the Court found that application of New York law, which did not permit interspousal lawsuits, was not contrary to the public policy of this state. More recently, in Williams v.State Farm Mutual Automobile Ins. Co., 229 Conn. 359, ___ A.2d ___ (1994), the Court applied New York law to an uninsured motorist claim brought by a Connecticut resident injured in an accident which occurred in New York even when New York law barred the insured from collecting uninsured motorist benefits which would have otherwise been available to him under Connecticut law. The Court acknowledged that Connecticut's policy is that uninsured motorist statutes and regulations are "remedial in nature and designed to protect people from uninsured motorists."229 Conn. at 373. Nonetheless, the court ruled that New York law applied to the plaintiff's claim even though it barred recovery for the insured.
For the foregoing reasons, the law of Georgia applies to this action.
By the court,
Aurigemma, J.