[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR JUDGMENT
By application filed May 24, 1999, the plaintiff, Mashantucket Pequot Gaming Enterprise, moved for default for failure to appear, for judgment and for an order of weekly CT Page 12827 payments against the defendant, Vincent P. DiMasi, pursuant to section 17-23, et seq. of the Practice Book. Section 17-24 (a) provides, in relevant part, as follows "In any action based upon an express or implied promise to pay a definite sum and claiming only liquidated damages, which may include interest, a reasonable attorney's fee and other lawful charges, the procedure set forth in section 17-20 and in sections 17-25 through 17-28 shall be followed, if there is a default of appearance."
The "liquidated" debt in this case is an underlying judgment against the defendant obtained in the Mashantucket Pequot Tribal Court ("Tribal Court") on March 12, 1999. Judgment entered in favor of the plaintiff in the amount of $2,000.00 damages together with costs in the amount of $116.24, for a total award of $2,116.24.
The plaintiff seeks enforcement of the judgment obtained in the Tribal Court as a foreign judgment under the principle of comity. Given the fact that this issue appears to be one of first impression in Connecticut, the court requested and heard oral argument on June 17, 1999. Counsel for the plaintiff submitted a brief in support of the motion for judgment on July 14, 1999. At the time of oral argument and in the plaintiffs brief, it was admitted that the underlying debt was an extension of credit for the purpose of gaming. For purposes of the current motion, the plaintiff claims it is entitled to enforcement solely under the principle of comity.[1]
"[C]omity is a flexible doctrine, the application of which rests in the discretion of the state where enforcement of a foreign order is sought. Because comity is a flexible doctrine, its contents are peculiarly subject to the dictates of public policy and considerations of fairness to litigants." Hao Thi Poppv. Lucas, 182 Conn. 545, 550, 438 A.2d 755 (1980); Walzer v.Walzer, 173 Conn. 62, 70, 376 A.2d 414 (1977). There are no Connecticut cases which address the issue of whether a judgment obtained in a Native American tribal court is a foreign judgment entitled to enforcement by the courts in the state of Connecticut under the principle of comity.
"Tribal court judgments are treated with the same deference shown decisions of foreign nations as a matter of comity. Hiltonv. Guyot (1895), 159 U.S. 113, 163-64, 16 S.Ct. 139, 143,40 L.Ed. 95, 108; In re Marriage of Limpy (1981), Mont.,636 P.2d 266, 38 St. Rep. 1885; State ex rel. Stewart v. District Court
CT Page 12828 (1980), Mont., 609 P.2d 290, 37 St. Rep. 635; Red Fox and RedFox (1975), 23 Or. App. 393, 542 P.2d 918; Wakefield v. LittleLight (1975), 276 Md. 333, 347 A.2d 228; In Re Lynch's Estate (1962),92 Ariz. 354, 377 P.2d 199; Begay v. Miller (1950), 70 Ariz. 380,222 P.2d 624." Wippert v. Blackfeet Tribe, 654 P.2d 512, 515
(Mont. 1982). The fact that the Mashantucket Pequot Tribe was not recognized by the United States until 1983 does not render this line of cases inapposite, since the Connecticut Indian Land Claims Settlement Act, 25 U.S.C. § 1751 et seq., does not preclude the establishment of tribal courts, in spite of the fact that the Tribal Reservation is subject to state jurisdiction "to the maximum extent." 25 U.S.C. § 1755.
Before applying the principle of comity to the present situation, this court must first be satisfied that the Tribal Court had jurisdiction over the defendant when it entered its judgment on March 12, 1999. "Whether a foreign judgment is to be recognized under the full faith and credit clause of the constitution of the United States or as a matter of comity it must first appear that the judgment itself is valid. Where the court rendering the judgment lacks jurisdiction of the subject matter the judgment itself is void." Krueger v. Krueger,179 Conn. 488, 493, 427 A.2d 400 (1980); Marshall v. Clark,170 Conn. 199, 205, 365 A.2d 1202 (1976).
Absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances. Strate v. A-1 Contractors, 520 U.S. 438,445, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). In Strate, the United States Supreme Court quoted extensively from its previous decision, Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245,67 L.Ed.2d 493 (1981). "The Montana opinion added, however, that in certain circumstances, even where Congress has not expressly authorized it, tribal civil jurisdiction may encompass nonmembers. "To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, CT Page 12829 the economic security, or the health or welfare of the tribe.' Id., at 565-566 (citations and footnote omitted)." Strate,520 U.S. at 446.
The Tribal Court clearly had jurisdiction over the defendant in this case. The defendant was at Foxwoods Resort Casino and signed a document entitled "Credit Application" in order to obtain an extension of credit for the purpose of gaming. His signature appears directly beneath the following statement: "Applicant agrees that any credit extended to Applicant by Foxwoods High Stakes Bingo and Casino will be governed by the laws of the United States and the Mashantucket Pequot Tribe including the Final Mashantucket Pequot Gaming Procedures,56 Fed. Reg. 24996. Any obligation incurred by Applicant with respect to such credit may be enforced in the Mashantucket Pequot Tribal Court or any other court of competent jurisdiction." The defendant was on reservation land and entered into a consensual arrangement concerning the extension of credit. In failing to abide by the terms of repayment, he subjected himself to the jurisdiction of the Tribal Court in an action brought against him to collect this outstanding debt.
In finding that the Tribal Court had jurisdiction of the cause, this court must make further inquiry as to whether the defendant was provided due notice of the institution of the action in the Tribal Court and was afforded fair opportunity to contest the allegations in the complaint. It is of no moment that the defendant failed to avail himself of the opportunity as long as it was indeed provided him. The judgment of March 12, 1999 provides that a summons was issued and served upon the defendant in accordance with section 6 of the Mashantucket Pequot Debt Collection Ordinance ("Ordinance").
Section 6 of the Ordinance provides for the issuance of a summons which specifies, inter alia, the times within which the defendant must appear and file an answer to the complaint. The summons, together with a copy of the complaint, must be served upon the defendant. Service can be effected by any person who is not a party and who is at least 18 years of age in any of the following manners: 1) personally delivering a copy of the summons and complaint to the defendant; 2) leaving a copy of the summons and complaint at the defendant's dwelling house or usual place of abode; or 3) mailing a copy of the summons and complaint addressed to the defendant's dwelling house, usual place of abode, or last-known address by registered or certified mail, CT Page 12830 return receipt requested, postage pre-paid. Section 6 of the Ordinance further provides that the person effecting service must make proof thereof by an affidavit attesting that service was made and the person on whom and the manner in which service was made, including the date and time of the service. The affidavit of service and any return receipt on mail delivery must be filed with the Tribal Court.
The judgment of the Tribal Court specifically states that "a summons was issued and duly served upon the Defendant in accordance with Section 6 of the Mashantucket Pequot Debt Collection Ordinance as appears by the return of service endorsed thereon." This court concludes, from a review of the Ordinance and the judgment of March 12, 1999, that the Tribal Court had jurisdiction of the cause, that the defendant was duly notified of the institution, of the action in the Tribal Court and that he had the opportunity to fully and fairly contest the allegations before the Tribal Court.
Having concluded that the foreign court had jurisdiction of the matter, this court must now determine under the principle of comity whether any public policy of the state of Connecticut prohibits the enforcement of the Tribal Court judgment. Hao ThiPopp v. Lucas, 182 Conn. 545, 550, 438 A.2d 755 (1980); Walzer v.Walzer, 173 Conn. 62, 70, 376 A.2d 414 (1977). As conceded by the plaintiff, the underlying debt upon which judgment entered in the Tribal Court involved an extension of credit for the purpose of gaming. General Statutes section 52-553 provides that wagering contracts are void.[2] The issue, therefore, is whether this statute precludes enforcement of the Tribal Court judgment because it violates the state's public policy against gambling.
In Ciamnittiello v. Campitello, 134 Conn. 51, 54 A.2d 669
(1947), our Connecticut Supreme Court had occasion to address this issue. The plaintiff sought to enforce in Connecticut a legal right of action arising out of parimutuel betting at a race track in Rhode Island. Wagering on horse races was lawful in Rhode Island but illegal in Connecticut. The Court noted various statutory provisions, including the predecessor statute to section 52-553, and concluded that Connecticut's legislation expressed an ancient and deep-rooted public policy against such wagering. In the mid-1970's, two superior court decisions involved claims to enforce out-of-state gambling debts. In King International Corp. v. Voloshin, 33 Conn. Sup. 166, 366 A.2d 1172
(1976), Judge Grillo enumerated various legislative enactments CT Page 12831 after the Supreme Court's decision in 1947 which authorized, inter alia, the operation of a lottery, the establishment of off-track betting parlors, parimutuel betting at licensed racing events and the operation of frontons for the exhibition ofjai alai. "In spite of the legislation set forth above, however, Connecticut has never deviated from its ancient prohibition of gambling on credit . . . The prohibition of gambling on credit has been a part of anti-gambling statutes in this state for about two hundred years . . . It is not incongruous for a legislature to sanction certain forms of gambling and still to refuse the collection of gambling debts"
Id. at 169-170.
Similarly, in Hilton International Co. v. Arace,35 Conn. Sup. 522, 394 A.2d 739 (1977), in an appellate session decision written by Judge Healey, the court concluded that "[d]espite these recent legislative enactments in Connecticut, this court is of the view that there is still a strong policy against gambling, except where it is authorized specifically by our statutes." Id. at 528.
The most recent decision on this issue is another Connecticut Supreme Court decision, Casanova Club v. Bisharat, 189 Conn. 591,458 A.2d 1 (1983). In Casanova Club, the plaintiff argued that the state's public policy against gambling, although acknowledged to be "ancient and deep-rooted", had become so attenuated that it should not be applied to bar recovery for a gambling transaction which took place and was valid in Great Britain. The Court noted that the General Assembly had, made substantial inroads into the public policy against gambling, but nevertheless concluded that "[n]one of these statutes, however, permits gambling on credit, and that is the vice at which the underlying statutes forbidding wagering contracts; General Statutes 52-553 and 52-554; are particularly directed." Id. at 598. The Court was urged to reconsider Ciampittiello v. Campitello, supra, because of the judicial and legislative developments, but it declined to do so because the case before it was an appeal from a judgment rendered upon cross motions for summary judgment and the Court lacked a factual basis in the record to undertake such a review.
Subsequent to the Casanova Club decision, additional gaming activities have been legalized in the state of Connecticut. Foxwoods Resort Casino operates pursuant to the provisions of the Final Gaming Procedures (the "Compact") authored by the state of CT Page 12832 Connecticut and adopted by the Department of the Interior. Sections 10, 13, 15, 16, 18 and 19 of the Compact contain detailed provisions concerning the extension of credit and collection practices. This court finds that these state sanctioned activities constitute a significant further erosion of the public policy against gambling.
Although General Statutes section 52-553 renders wagering contracts void, various exceptions have been validated by legislation with respect to, inter alia, the state lottery, off-track betting and dog racing. The Compact provides yet another state sanctioned exception for an extension of credit for gaming purposes at the Foxwoods Resort Casino. Under the unique circumstances of this case, the court finds that enforcement of the defendant's underlying debt does not violate the state's public policy against gambling. The judgment of the Tribal Court is, therefore, entitled to enforcement by this court under the principle of comity.
After examination of the affidavits on file, this court finds that the defendant is not in the military or naval service and that there is owed to the plaintiff the amount of $2,116.24 plus costs in the amount of $228.24. Judgment is rendered for the plaintiff to recover the total amount of the judgment from the defendant. It is further ordered that the defendant make weekly payments of $25.00 commencing November 1, 1999, payable to John C. Wirzbicki, Esq., Brown, Jacobson, Tillinghast, Lahan King, P.C., 22 Courthouse Square, Norwich, Connecticut. The plaintiff is obligated to provide a copy of the Notice and Judgment to the defendant in accordance with section 17-28 of the Practice Book.
Koletsky, J.